# GENERAL AMERICAN LIFE INSURANCE COMPANY ET AL V. H. M. RAMP ET AL.

No. 7459. Decided April 3, 1940.
Rehearing overruled May 29, 1940.
(138 S. W., 2d Series, 531.)

*Terrell, Davis, Hall & Clemens* and *A. V. Knight,* all of San Antonio, and *Hoover, Hoover & Cussen,* of Canadian, for plaintiffs in error.

A contract tainted with usury may be purged of such usury by a subsequent written contract eliminating all possibility of interest in excess of ten per cent per annum. Cotton States Bldg. Co. v. Jones, 94 Texas 497, 62 S. W. 741; Leake v. Saunders, 126 Texas 69, 84 S. W. (2d) 993; Rogers v. Rogers, 15 S. W. (2d) 1037.

On the question of Limitation. Dugan v. Lewis, 79 Texas 247, 66 S. W. (2d) 428; Spiller v. Bell, 55 S. W. (2d) 634; Walker v. Temple Trust Co., 124 Texas 575, 80 S. W. (2d) 935.

*Sanders & Scott* and *Howard F. Saunders, Jr.,* of Amarillo, and *E. L. Klett,* of Lubbock, for defendants in error.

On question of Usury. Shropshire v. Commerce Farm Credit Co., 120 Texas, 400, 39 S. W. (2d) 11; Temple Trust Co. v. Stobaugh, 59 S. W. (2d) 916; Lane v. El Paso Bldg. & Loan Association, 81 Texas 369, 17 S. W. 77.

On question of limitation. Willis v. Stroud, 67 Texas 516, 3 S. W. 732; Boyd v. Ghent, 95 Texas 46, 64 S. W. 929; Patton v. Chrisp, 11 S. W. (2d) 826.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

This case has three separate features. The first is a controversy between General American Life Insurance Company on one side, and H. M. Ramp et al on the other. We shall refer to this as the First Part. The second is a controversy between Commerce Trust Company et al on the one side, and H. M. Ramp et al on the other, and it will be referred to as the Second Part. The third is a suit between H. M. Ramp et al v. Commerce Trust Company et al, and it will be referred to as the Third Part.

### FIRST PART.

This is a usury suit. It was instituted in the district court by H. M. Ramp and others against Commerce Farm Credit Company, JoZack Miller, George Gerlach, Walter Jones, the First National Bank of Canadian, Missouri State Life Insurance Company, General American Life Insurance Company and Commerce Trust Company. The General American Life Insurance Company is the main party here, and is plaintiff in error. For purpose of this decision it is sufficient to say that the loan forming the basis of the suit was dated January 29, 1921. On that date H. M. Ramp, individually and as community survivor of the estate of himself and his wife, Anna Ramp, then deceased, procured from the Commerce Farm Credit Company a loan in the sum of $50,000, evidenced by one principal note or bond, payable on the 1st of February, 1931, at the office of Commerce Trust Company in Kansas City, bearing interest from date until maturity at the rate of 6 1/2 per cent. per annum, evidence by ten interest coupons in the sum of $3,250 each thereto attached and after maturity at the rate of 10 per cent. per annum. To secure this indebtedness, a first deed of trust lien was executed to JoZack Miller, III, as trustee.

On the same day, Ramp, individually and as community survivor, executed a second deed of trust to JoZack Miller, III, as trustee, to secure the payment of four promissory notes in

the sum of $3,125 each, of even date with the deed of trust, and due February 1st of each successive year, beginning with February 1, 1922, which represented 2 1/2 per cent. additional interest on the loan for the entire period of ten years.

On March 7, 1921, the Commerce Farm Credit Company sold and assigned the principal note or bond of this loan in the sum of $50,000 to appellant Missouri State Life Insurance Company, who, on the 8th of September, 1933, after this suit was filed, assigned the same to appellant General American Life Insurance Company.

The additional interest notes were assigned to, and remained throughout the property of, Commerce Trust Company.

■ The Court of Civil Appeals held that this loan was usurious. 116 S. W. (2d) 1144. This holding was based on the ground that the additional 2 1/2 per cent. interest on the principal of the loan was "squeezed" into four annual payments of $3,125 each, instead of being spread over the ten-year period of the loan, and this resulted in making the rate for the first four years in excess of 10 per cent. per annum. This holding of the Court of Civil Appeals is so obviously correct that it becomes unnecessary to discuss the question. In fact, as we construe the various assignments in application for writ of error, plaintiff in error does not seriously attack this holding. At least, no argument is made and no authorities cited which tend to raise a doubt as to the correctness of the holding of the Court of Civil Appeals in this respect.

The one dominant question presented here on behalf of plaintiff in error is this: Even if the loan of January 29, 1921, were usurious, nevertheless the same was purged of usury by a new contract between the parties of February 1, 1925. Just what really took place on that date is reflected by a statement in the record about which there is no dispute at all. It is as follows:

"The loan of $50,000 was drawn at a coupon rate of 6 1/2% per annum. The difference to make the rate 9% (or 2 1/2% per annum) for ten years, total $12,500.00, was represented by four second lien notes of $3,125.00 each payable:

"$3,125.00 February 1, 1922
" 3,125.00 " 1, 1923
" 3,125.00 " 1, 1924
" 3,125.00 " 1, 1925.

"During the years 1922 to 1925 the interest at 6 1/2% on the first mortgage was paid us on the following dates:

"$3,250.00 due February 1, 1922, paid December 13, 1922
" 3,250.00 " February 1, 1923, " April 11, 1923

" 3,250.00  "  February 1, 1924,  "  March     21, 1924
" 3,250.00  "  February 1, 1925,  "  February   5, 1925.
"No part of said four commission notes having been paid.

"Early in 1925, these commission notes with past-due interest thereon, figured at a 6% rate, totaling $13,250.00 were redrawn under a compromise arrangement with Mr. Ramp to be payable, as follows:

"$5,750.00 due February 1, 1926, with interest at 6% from date.

" 1,250.00  "  February 1, 1926, without interest
" 1,250.00  "  February 1, 1927,    "       "
" 1,250.00  "  February 1, 1928,    "       "
" 1,250.00  "  February 1, 1929,    "       "
" 1,250.00  "  February 1, 1930,    "       "
" 1,250.00  "  February 1, 1931,    "       "

"These notes bore interest after maturity at 10%.

The instrument evidencing this new arrangement is designated as "second deed of trust." After formal parts, it recites the conveyance to the trustee of certain lands in Hemphill County which are described. It is recited that the conveyance is in trust to secure the Commerce Farm Credit Company in payment of seven notes described exactly as in the statement above quoted. The instrument then contains the following recital:

"Said notes are given as a part of the agreed interest on the principal debt secured by the first deed of trust above mentioned, and the beneficiary herein is entitled to all the rights of subrogation agreed and provided for in said first deed of trust."

The concluding portion of the instrument is as follows:

"This deed of trust is executed to secure my indebtedness to the Commerce Farm Credit Co., in the amount shown herein, which is admitted to be due to said Commerce Farm Credit Company, as a result of a complete settlement and adjustment of all matters between us in connection with the loan previously made me and secured by liens on the property above described. All claim which I might have had against said company by reason of asserted and denied usurious charges has been settled and is hereby released fully. The lien hereby granted is to take up and carry forward the lien of a previous deed of trust, dated January 29th, 1921, and recorded in Volume 11, page 618 of the deed of trust records of Hemphill County, Texas, and I admit the lien of that deed of trust to be valid: the purpose

of this deed of trust and the notes hereby secured being to extend the time for payment of the unpaid indebtedness as described in that deed of trust and carry forward the lien. The lien of the first deed of trust hereinabove mentioned is recognized as valid and subsisting and the debt thereby secured is recognized as valid and unpaid (except as to such principal or interest payments as may have been made) and the priority of the lien securing that debt over the lien of this deed of trust is admitted."

It is not even pretended that there was any "complete settlement and adjustment of all matters between us (the parties) in connection with the loan previously made" other than what was accomplished by this second deed of trust itself.

■ Before discussing the effect of this agreement, it becomes appropriate to make a few general remarks concerning the matter of purging a contract of usury. Without an intention of adopting a rule applicable in all cases and under all circumstances, we think we may adopt, as applicable to this discussion, the rule announced in 66 Corpus Juris, section 219, pages 256 and 257, and supported in principle by our own decisions, as well as the decisions of nearly all jurisdictions. It is as follows:

"The general principle determining when an indebtedness infected with usury is to be deemed disinfected may be stated as follows: If the tainted obligation is with the full knowledge and consent of the borrower, finally canceled or abandoned, and a new obligation, containing no part of the usury, is executed in legal form, and supported solely by the moral obligation resting upon the borrower to pay the money actually received with legal interest thereon, such new obligation is valid and enforceable. But so long as the original usurious obligation continues to exist, based upon a consideration in which usury inheres, the taint of usury persists, whatever be the form which the subsequent dealings of the parties may cause it to assume, and even though new parties may have been introduced, or the borrower allowed to assume a different relation to the security affected with usury."

■ That a removal of the taint of usury cannot be accomplished by merely a removal, or successive renewals of an original usurious contract, is settled beyond all controversy. See Wallace v. Scott & Sons, 127 S. W. (2d) 447, and authorities mentioned; also 66 Corpus Juris, section 222, pages 258 and 259.

The general rule, expressed affirmatively, is stated again in 66 Corpus Juris, section 223, page 259, as follows:

"A note may be purged of its usury by compromise and settlement whereby the old obligation is abandoned and a new and valid one given instead. Hence, when a usurious obligation is settled and abandoned, and a new security taken for the debt lawfully due with lawful interest thereon, such new security rests upon a consideration purged of usury, and is valid."

We may make the further general observation that in our opinion in all cases where it has been held by our courts that an executory contract has been purged of usury, as distinguished from release of liability for usurious interest which has been paid, it will be found that there was. a new contractual arrangement which in legal effect amounted to a novation, or the substitution of a new contract, based on a sufficient consideration, in lieu of the original usurious one.

■ In this instance, it is not pretended that the original contract of January 29, 1921, was cancelled or abandoned, or a new agreement created. That contract being usurious, its provisions for interest were absolutely void, both as regard the principal note, as well as the second lien notes. The transaction of February 1, 1925, merely dealt with a rearrangement of a part of the usurious interest. What the parties did was to take the second lien interest notes, then past due, aggregating $12,-500, add thereto 6 per cent. interest, making a total of $13,250, then divide this amount into seven annual payments. The express purpose was merely to renew and extend payment of the identical interest (plus 6 per cent. thereon) which had originally been squeezed into four annual installments. But it is argued that this could be done on the theory that as no payments had been made on the second lien notes, and they had become due, they ceased to be interest and became a part of the principal. The fallacy is obvious. This interest being void from the beginning could never be transmutted into a valid principal. So, this contract being void, even as to the second lien interest notes, certainly had no effect towards purging the principal note of its unlawful interest.

But counsel for plaintiff in error strenuously argue that they are supported in their position by the case of Cotton States Building Company v. Jones, 94 Texas 497, 62 S. W. 741. In fact that case constitutes the bed-rock of their whole contention on this phase of the case. We do not think that case, when rightfully interpreted, is authority here. The case was one

involving a building and loan association, wherein a stock-buying scheme was a part of the contract, and for this reason it must be read in connection with the case of Building and Loan Association v. Goforth, 94 Texas 259, 59 S. W. 871, which is cited. It is apparent from a careful consideration of all parts of the opinion that the court considered the second agreement, which attempted to purge the contract, amounted to a new agreement which fully supplanted the original contract. By reference to the case of Building and Loan Association v. Goforth, it will be seen that the court meant to hold that the stock-buying scheme did not prima facie contribute to making the contract usurious. The second agreement is not set out, but it entirely removed the "contingent fund" feature of the contract, and all money paid into that fund was credited to Jones on the principal indebtedness. We have examined the second agreement, as disclosed by the record in that case, and find that it is easily susceptible of a construction that it worked a novation. At least the court undoubtedly treated it as doing so, in light of the fact that the *sole* objection to same was that "it was without consideration to support it." It is significant that in discussing the question of consideration the court some two or more times refers to a "new contract" or a "new promise." Besides, it is further obvious that the "moral obligation" which the court held was sufficient to support a new promise, was a moral obligation to pay the indebtedness itself. In the present instance, the second agreement related solely to interest, which was void from its inception, and we are not willing to say that there is a moral obligation to pay illegal interest. However, as the second agreement removed nothing whatever of the obnoxious elements of the original contract, but merely sought to rearrange the spurious interest, the agreement was wholly insufficient to purge the contract from the taint of usury, and it is unnecessary to discuss more fully the sufficiency of consideration for such agreement.

The Court of Civil Appeals allowed plaintiff in error certain credits, and overruled certain counter propositions of defendants in error. However, defendants in error in their application have submitted no assignments questioning these rulings. This part of the judgment of the Court of Civil Appeals is affirmed.

## SECOND PART.

This was an action by H. M. Ramp and others against W. H. Potts and Commerce Credit Company to cancel a judgment rendered in the District Court of Hemphill County August 30,

1924. Such judgment was in favor of First National Bank of Canadian and against George Gerlach as principal and H. M. Ramp as surety. This judgment had been assigned by the bank to Potts, who took for the use and benefit of Commerce Credit Company, and same was, after institution of the suit, assigned by Potts to that company. Said Commerce Credit Company is plaintiff in error in this part of the case.

The judgment, as above stated, was dated August 30, 1924. It contained the following provisions:

"It is further ordered by the Court upon agreement of parties made in open court, that no execution issue on the judgment herein until after expiration of 180 days from and after date of rendition."

■ There is some evidence in the record indicating that an execution was issued on this judgment March 2, 1925. However, the jury found that the bank did not cause said execution to be placed in the hands of the Sheriff of Hemphill County. There is some complaint upon the part of plaintiff in error because of failure of the court to submit a specially requested issue upon this matter in lieu of the issue which was submitted. We do not think the question is presented in such way as to show error. However, the party who represented the bank in procuring the execution testified, in substance, that he handed it to the sheriff, stating that it looked like everything Ramp or Gerlach had was plastered, and the sheriff asked him what they could get hold of to levy on, to which he replied that he didn't know; that to levy on mortgaged property would probably cause Ramp to lose everything he had and not result in satisfying the judgment; that the sheriff asked what he should do with the execution, to which he replied he didn't know but one thing to do, if the sheriff had no knowledge of any property subject to it, and that was to return it marked no property found in Hemphill County, or nulla bona. It does not appear that the execution was ever returned. We are of the opinion that this falls short of showing "issuance" of execution, as provided by Article 3773 of the Revised Statutes of 1925. Harrison v. Orr, 296 S. W. 871.

■ No execution having been issued within twelve months from the rendition of the judgment, regardless of how such twelve months may be computed, the judgment became dormant. In the action brought by Ramp to cancel the judgment, Potts filed cross action on December 5, 1934, and Commerce Trust Company filed a like cross action on February 22, 1935. It is con-

tended that the cross action should be regarded as an action to revive the judgment, and with this we agree. The vital question presented by plaintiff in error and urged with much force is this: That although suit to revive the judgment was brought more than ten years after the date of the judgment, yet it was brought within ten years after the expiration of the 180 days fixed in the judgment from and after which execution might issue; and therefore this was in compliance with Article 5532 of the Revised Statutes of 1925. In other words, plaintiff in error contends that the ten years within which the suit to revive might be instituted is to be calculated from the termination of the stay of execution and not from the date of the judgment. Article 5532 is as follows:

"A judgment in any court of record, where execution has not issued within twelve months after the rendition of the judgment, may be revived by scire facias or an action of debt brought thereon within ten years after date of such judgment, and not after."

This statute does not pertain to a judgment creditor's right of enforcement, or the matter of keeping his judgment alive. He has a simple and inexpensive remedy in that regard, and may prolong the life of the judgment indefinitely by merely having executions timely issued as provided by Article 3773. Article 5532 is an additional remedy by means of which he may, at any time within ten years, revive a judgment from its dormancy, and can make it a lien against the debtor's property for an indefinite period of time. Such statutes should be strictly construed. Thomas v. Murry, 174 Okla. 36, 49 Pac. (2d) 1080, 104 A. L. R. 209. This remedy being purely a statutory one, we think it must be measured by the statute itself, which plainly declares that the action must be brought within ten years after *date* of judgment, and not after. The courts have no authority to make an exception to this statutory rule. Russell v. McCampbell, 29 Texas 31; Gardenhire v. King, 97 Tenn. 585, 37 S. W. 548; Savings & Trust Co. v. Bear Valley Irrigation Co., 89 Fed. 32; McGinnis v. Seibert, 37 Okla. 272, 134 Pac. 396. This part of the judgment of the Court of Civil Appeals is affirmed.

### THIRD PART.

This part of the case concerns a cross action by H. M. Ramp against Commerce Farm Credit Company and Commerce Trust Company. In his main suit, Ramp contended that he was entitled to credits upon the principal note in the sum of $50,-

000, executed in 1921, and held by General American Life Insurance Company, of sums paid to third parties upon prior loans and upon second lien interest notes. The General American Life Insurance Company, in its answer, alleged that it had received no part of such payments and was not chargeable with same upon its principal note. Thereupon, on June 5, 1935, Ramp filed his cross action against Commerce Farm Credit Company and Commerce Trust Company, praying in the alternative that if the court should decide that he was not entitled to credits against the American General Life Insurance Company, he then have judgment against Commerce Farm Credit Company and Commerce Trust Company for sums paid to them upon the theory of money had and received. In his petition he showed that the last payment made to anyone was on February 2, 1931. The defendants in cross action, among other things, pleaded limitation.

The trial court allowed Ramp credit as against the American General Life Insurance Company for payments made to third parties on prior loans and on second lien interest notes. The cross action of Ramp was dismissed. Ramp filed no motion for new trial and prosecuted no appeal. He filed no cross assignments in the Court of Civil Appeals. He now claims that as he obtained full relief in the trial court, he was not required to do so. It will be observed that the Court of Civil Appeals reversed the judgment of the trial court in so far as it allowed credits against the General American Life Insurance Company of sums paid to third parties on prior loans and on second lien notes. In the Court of Civil Appeals Ramp filed a motion for rehearing, requesting the court to reverse and remand the cause as to his cross action against the Commerce Farm Credit Company and the Commerce Trust Company. This motion was overruled by the Court of Civil Appeals. His application for writ of error presents the sole question of his right to have this cause of action remanded, and the writ was granted because of granting the other writs.

7    Even conceding that plaintiff in error in this part of the case is in position to ask the relief prayed for, which we very much doubt, yet it appears beyond question that his alleged action against the Commerce Farm Credit Company and the Commerce Trust Company is barred by limitations, and no useful purpose could be conserved by remanding this part of the case.

The judgment of the Court of Civil Appeals is in all things affirmed.

Opinion adopted by the Supreme Court April 3, 1940.

Rehearing overruled May 29, 1940.