**RUTHERFORD v. HUGHES et al.**

Civ. A. 207.

United States District Court
E. D. Texas, Paris Division.

Feb. 25, 1952.

---

162

Moore & Moore, Paris, Tex., for plaintiff.

O. B. Fisher, Paris, Tex., R. R. Holloway, Brownwood, Tex., for defendant, S. W. Hughes.

Warren G. Moore, U. S. Atty., Tyler, Tex., for defendant, Stanford C. Stiles, U. S. Marshal.

SHEEHY, District Judge.

Plaintiff instituted this suit against S. W. Hughes and Stanford C. Stiles in his capacity as United States Marshal for the Eastern District of Texas, seeking to enjoin the defendants from selling the lands described in plaintiff's complaint under an execution, issued by the Clerk of this court on October 24, 1950, on a judgment that was entered in Cause No. 1102 at Law on January 7, 1935, in this division of this court for the sum of $629.75 in favor of Grover C. Wagner, Receiver of the American National Bank of Paris,. Texas, against plaintiff herein and J. F. Rutherford, jointly and severally. Plaintiff contends, among other reasons, that the relief sought should be granted, because: First, the two tracts of land levied on and described in plaintiff's complaint constituted plaintiff's homestead under the constitution and laws of the State of Texas, and, second, that the judgment forming the basis of the execution was dormant at the time the execution in question was issued on October 24, 1950, because an execution was not caused to be issued prior to the expiration of ten years from the date

the last prior execution was issued on said judgment with the intention that said execution be enforced. The defendant Hughes by his answer, in addition to joining issue with the plaintiff as to the contentions above mentioned, by way of cross action against the plaintiff, asserted both a judgment and execution lien on the property in question and sought foreclosure of said liens. A trial of this case was had before the late Honorable Randolph Bryant, the then Judge for this district, at the January, 1951 term of this court and Judge Bryant had the case under advisement at the time of his untimely death in April, 1951. All parties herein agreed to submit this case to me, Judge Bryant's successor, upon the record made at the trial of this case before Judge Bryant.

Sometime prior to January 1, 1945, defendant Hughes became the owner of the judgment above mentioned and has been the owner of same at all times subsequent thereto. On October 24, 1950, Hughes caused the Clerk of this court to issue an execution on said judgment. The execution was placed in the hands of Marshal Stiles, who on October 26, 1950, pursuant to said writ, levied on the two tracts of land in Lamar County, Texas, described in plaintiff's complaint and which for the sake of convenience will be hereinafter referred to as a 99 acre tract and a one acre tract, respectively. Prior to the date the property was to be sold under said execution, the plaintiff instituted this suit to enjoin the sale under and the enforcement of said execution.

If the two tracts constituted the homestead of plaintiff, they, under the constitution and laws of Texas, are not subject to sale under the execution. Section 50, Article 16, Texas Constitution, Vernon's Ann.St.

On the question of homestead, the pertinent facts are found to be as follows:

In 1940 plaintiff acquired by purchase the 99 acre tract. At that time he, his wife and two children were living with his wife's grandmother in Petty, Lamar County, Texas, which the parties have stipulated was a "village" within the meaning of that term as used in the Constitution and laws of the State of Texas relating to homesteads. Petty is unincorporated and contains approximately 50 residences with a population of approximately 200. It contains two churches, a school house, a railroad station, a post office, a gin and five places of business (stores and filling stations). At the time plaintiff purchased the 99 acre tract, he was manager of a cotton gin in Petty. He continued in that position until 1945, at which time he was employed by Fant Milling Company as a traveling salesman covering parts of Lamar and several surrounding counties in Texas. He has continued in that employ until the present with the exception of a period of approximately one year, commencing in July, 1948. Then he was employed as a salesman for a wholesale grocery company in Paris, Texas. Plaintiff, because of his physical handicap, was unable to do very little, if any, actual farm work. In 1941, 1942, 1943 and 1944, plaintiff farmed the 99 acre tract using day labor. During the years 1945, 1946, 1947 and 1948, the 99 acre tract was rented to tenants on a share crop basis, because plaintiff was unable to obtain laborers to work on the farm. In 1949, 1950 and 1951, plaintiff again worked the 99 acre tract himself with day laborers.

At the time the 99 acre tract was acquired by plaintiff, there was no house on it suitable for occupancy by plaintiff and his family. In 1943, plaintiff attempted to improve a house located on the 99 acre tract in order to make it suitable for occupancy by his family, but, due to the war time priorities then in effect, he was unable to get the material necessary to improve the house and it was then that he purchased the one acre tract in Petty above mentioned on which was located a suitable house and other improvements. When he got possession of the one acre tract in 1943, plaintiff with his family moved thereon and occupied same as their home until he moved to Paris, Texas in 1948. As long as plaintiff lived on the one acre tract, he looked after the farming operations on the 99 acre tract and kept some of the farm machinery, including a tractor, used on the 99 acre tract at his home on the one acre tract. In 1948, plaintiff and his family moved to Paris, Texas, where they have since lived in a rented apartment. He moved to Paris so his wife, who had ob-

tained temporary employment in Paris, could be near her work. Plaintiff did not, either at the time he moved to Paris or at any other time subsequent thereto, intend to make Paris his permanent residence, but intended for his residence to remain in Petty where he intends to return to live. Plaintiff owns no real estate other than the 99 acre and one acre tracts and has at all times, since he acquired the one acre tract, claimed both tracts as his homestead.

The one acre tract is located within the limits of the village of Petty. The 99 acre tract is located about ¾ of a mile from the one acre tract and is outside of what would be said to be the limits of Petty. There is at least one residence, a church, a school house and a farm located between the one acre tract and the 99 acre tract. Due to the location of the one acre tract with reference to the 99 acre tract and the streets, or roads, there available, it was practical for plaintiff to live on the one acre tract and carry on the farming operations on the 99 acre tract.

Section 50, Article 16 of the Texas Constitution protects the homestead from forced sale for the payment of all debts, except those enumerated therein. The judgment forming the basis of the execution in question, does not come within one of those exceptions. Section 51 of said Article 16 of the Texas Constitution [1] defines and lim-

its the homestead. The legislature of Texas, many years ago, enacted what is now Article 3833, R.C.S. of Texas, 1925.[2]

The courts of Texas have applied the rule of liberal construction to the constitutional and statutory provision relating to homesteads to protect the homestead and carry out the constitutional intent. Whiteman v. Burkey, 115 Tex. 400, 282 S.W. 788.

It is true that the Texas Constitution [3] specifically provides that a homestead, whether rural or urban, may consist of more than one tract or parcel of land, and it is equally true that land may be actually within the limits of a town or village not incorporated,[4] or partially within the limits of a town or village, or partially without said limits [5] and constitute a rural homestead, but a person cannot have both a rural and an urban homestead at the same time,[6] nor can homestead rights be blended, i. e., both rural and urban.[7]

It is clear from the evidence that the 99 acre tract and the one acre tract, considered together, do not have the character of an urban homestead and are not and could not be considered the urban homestead of plaintiff. Plaintiff has conceded that if both tracts do not constitute his homestead, the one acre tract upon which his home is located, is his homestead.

We do not have here the situation where a rural homestead actually existed

1. "The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

2. "The homestead of a family, not in a town or city, shall consist of not more than two hundred acres, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of a lot or

lots, not to exceed in value five thousand dollars at the time of their designation as a homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family. Any temporary renting of the homestead shall not change the character of the same when no other homestead has been acquired."

3. Sec. 51, Art. 16, Texas Constitution.

4. Wilder v. McConnell, 91 Tex. 600, 45 S.W. 145.

5. Jones v. First National Bank of McAllen, Tex.Com.App., 259 S.W. 157.

6. Posey v. Bass, 77 Tex. 508, 14 S.W. 156.

7. Mikael v. Equitable Security Co., 32 Tex. Civ.App. 182, 74 S.W. 67 (writ of error refused).

and the corporate limits of a city were extended so as to take in part of the land (the part on which the dwelling house was located) used as the homestead for farming purposes and it was claimed that the part taken into the city limits became an urban homestead, even though the use made of the land continued to be the same after the city limits were extended, and no other material change in the character of the property took place other than the extension of the city limits as was the case in both Posey v. Bass, 77 Tex. 508, 14 S.W. 156 and Pridgen v. Warn, 79 Tex. 588, 15 S.W. 559 relied on by plaintiff as supporting his contention that the one acre tract and the 99 acre tract, together, constitute his homestead. Here we have a situation where plaintiff, already the owner of a 99 acre tract of farm land, rural in character, purchased the one acre tract, which was nothing more than a house and lot, in order that he and his family might have a home within which to live. Plaintiff, at the time he purchased the one acre tract, was residing in the village of Petty. The one acre tract, at the time plaintiff acquired it and at all times subsequent thereto, has been located within the settled limits of Petty. A school house and some of the buildings of Petty were located between the one acre tract and the 99 acre tract. The evidence leads to but one conclusion and that is that the one acre tract was a constituent part of the village of Petty. As was said by the Supreme Court of Texas in Posey v. Bass, supra [77 Tex. 508, 14 S.W. 157], "It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country, it is a rural homestead; if it be in the city, it is an urban residence."

■ Therefore, it is concluded that under the evidence herein and the pronounced law of the State of Texas [8] the one acre tract is, and was at all times pertinent, plaintiff's urban homestead and only that tract is exempt from forced sale under execution.

Was the judgment forming the basis of the execution in question dormant at the time said execution was issued on October 24, 1950?

In view of the provisions of Sec. 1962, Title 28, U.S.C.A., the question of whether said judgment was dormant must be decided in light of the law of Texas.

Art. 3773, R.C.S. of Texas, 1925, Vernon's Ann.Civ.St. provides, in part: "If no execution is issued within 10 years after the rendition of a judgment in any court of record, the judgment shall become dormant and no execution shall issue thereon unless such judgment be revived." Art. 5532, R.C.S. of Texas, 1925, provides the manner in which a judgment may be revived, but there is no contention that there was any revival of the judgment forming the basis of the execution in question in either manner provided for by said Art. 5532.

The facts show that the judgment forming the basis of the execution in question was entered on January 7, 1935, and that the first execution was issued by the Clerk of this court at the request of Hughes on December 30, 1944. The Clerk delivered said execution to Hughes, who in turn transmitted it along with 16 other executions issued in other cases to the United States Marshal for this district. In the letter to the Marshal, which was dated January 29, 1949, transmitting said executions, Hughes stated in part: "We have had a check made and find nothing that would be subject to execution, and after you have done so, if nothing is found, make your return state that after diligent search and inquiry no property found subject to execution, and return the same to the Clerk there * * *." Hughes further stated in said letter: "I am sure you will understand the above, however, if you need other information, kindly advise me". By letter dated February 3, 1945, Marshal Stiles advised Hughes that the writs and Hughes' letter of January 29, 1945, had been received and that he would be glad to make the return on the executions at the statutory fee of $1 each or a total of $17. The Marshal in said letter further advised: "However, if you wish the

---

8. Jones v. Monroe, Tex.Com.App., 288 S. W. 802; Mikael v. Equitable Securities Co., supra; Woolf v. Smith, Tex.Civ. App., 86 S.W.2d 67; and Buttram v. Harris, 5 Cir., 73 F.2d 679.

deputy to make a search for property subject to execution, you can make a deposit with me for $25.00 to cover his expenses in doing so".

Replying to the Marshal's letter of February 3, 1945, Hughes by letter dated February 6, 1945, sent the Marshal a check for $17 covering the Marshal's fee for making the return on the 17 executions, but made no comment whatsoever with reference to the Marshal's statement in his letter of February 3, 1945, addressed to Hughes to the effect that if Hughes desired the Marshal to make a search for property subject to execution, a deposit of $25 would have to be made with the Marshal to cover the expenses of such a search. Subsequent to receiving Hughes' check for $17, the Marshal on February 8, 1945, made a "non-est" return on each of the 17 executions that were forwarded with Hughes' letter of January 29, 1945, and filed same with the Clerk of this court.

Hughes testified that in August or September, 1945, he came to Lamar County, Texas, and made a check of the deed records and tax records of that county to ascertain if plaintiff, herein, had any property that was subject to execution, and all he found any record of was the 99 acre tract which was carried on the tax rolls as a homestead. The deeds to plaintiff covering the one acre tract had not been recorded at that time, and the one acre was not rendered on the Lamar County tax records in plaintiff's name until the year 1945.

▉ The Supreme Court of Texas is committed to the view that Article 3773, supra, must be strictly construed.[9] The Commission of Appeals of the Supreme Court of Texas in Harrison v. Orr, Tex.Com.App., 296 S.W. 871, held that "issuance" of execution as provided in Article 3773 means something more than mere clerical preparation and included unconditional delivery to an officer for enforcement in the manner provided by law. This holding was later again approved by the Texas Supreme Court.[10]

▉ Under the facts and circumstances in this case, was the delivery by Hughes of the execution issued on December 30, 1944, to the Marshal made in good faith with the intention that it be enforced in the manner provided by law? I cannot escape the conclusion that it was not. Here we have a situation where Hughes, a judgment creditor, a few days before the 10 year period provided for in Article 3773, supra, expired has the Clerk issue an execution on the judgment in question and deliver same to him, then he, Hughes, approximately three weeks after the 10 year period had expired, forwards the execution with 16 others in other cases to the Marshal advising the Marshal that he, Hughes, could find nothing subject to execution and practically invited the Marshal to make a "nulla bona" return on the executions. If said letter of January 29th was the only communication that passed between Hughes and the Marshal with reference to the executions, Hughes might be in a different position here, because there is language in the letter that could be interpreted as meaning Hughes contemplated that the Marshal would make a search for property subject to execution. However, that is not the case, because the Marshal immediately replied to Hughes' letter and not only informed Hughes that his fee for making the returns on the executions would be $1 each or a total of $17, and that if he wished the returns made, he would have to remit $17, but the Marshal also informed Hughes that if he, Hughes, desired the Marshal to make a search for property subject to execution, a deposit of $25 would have to be made with the Marshal to cover the expenses of such a search. The Marshal was well within his rights in making such a request. But nonetheless, Hughes promptly replied to the Marshal's letter and sent the $17 to cover the Marshal's fee for making the returns on the executions, but he neither sent the $25 deposit requested to cover the expenses of the Marshal in making a search for property upon which to levy, nor did he make any mention of a search being made. In view

---

9. Commerce Trust Co. v. Ramp, 135 Tex. 84, 138 S.W.2d 531.

10. Commerce Trust Co. v. Ramp, supra.

of the Marshal's letter to Hughes dated February 3, 1945, Hughes' reply thereto dated February 6, 1945, had the effect of a request on the part of Hughes that the Marshal make a "nulla bona" return on the executions without making any search or effort to locate property of the plaintiff herein upon which a levy could be made. In other words, there was not an unconditional delivery of the executions issued in December, 1944, to the Marshal for enforcement in the manner provided by law, and, therefore, there was not an "issuance" of said execution within the meaning of Article 3773, supra.[11] It follows that under the law of Texas, the judgment forming the basis of the execution issued by the Clerk of this court on October 24, 1950, above referred to, became dormant upon the expiration of 10 years from and after January 7, 1935, the date the judgment was entered, and has remained dormant at all times subsequent thereto. The judgment having been dormant when an abstract of judgment was filed with the County Clerk of Lamar County on January 29, 1945, and when the execution forming the basis of this suit was issued on October 24, 1950, and the levy thereunder was made on October 26, 1950, the defendant Hughes did not acquire either a judgment lien or an execution lien on the land levied on. It is proper to enjoin the levy and the sale under an execution issued on a dormant judgment.[12]

Plaintiff will be granted an injunction perpetually enjoining the defendants and each of them from selling or in anywise disposing of any of the lands described in plaintiff's complaint under the execution issued by the Clerk of this court on October 24, 1950, above referred to. The relief prayed for by the defendant Hughes in his cross action herein will be in all things denied, and all costs of court herein will be adjudged against the defendant Hughes.

The attorneys for plaintiff should present appropriate form of order for signing and entry.

11. Commerce Trust Co. v. Ramp, supra; Harrison v. Orr, supra.

12. Commerce Farm Creditor Co. v. Ramp, Tex.Civ.App., 116 S.W.2d 1144, affirmed 135 Tex. 84, 138 S.W.2d 531 and cases therein cited.