**Clyde SKEEN, Appellant,**

v.

**E. R. SLAVIK et al., Appellees.**

**No. 19243.**

Court of Civil Appeals of Texas, Dallas.

Aug. 15, 1977.

Rehearing Denied Sept. 15, 1977.

**518**

G. Leroy Street, Kirk R. Williams, Geary, Stahl, Koons, Rohde & Spencer, Dallas, for appellant.

Gerald R. Coplin, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, for appellees.

AKIN, Justice.

E. R. Slavik and D. J. Slavik and Mobile Parks of America Corporation sued Clyde Skeen for payment of notes given by Skeen to plaintiffs, foreclosure on the property held as security for the debt, and attorneys' fees. Defendant contended at trial, as on this appeal, that the notes sued upon are usurious to such an extent that they are unenforceable under Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(2) (Vernon 1971), as being twice the rates of interest allowed by Tex. Rev.Civ.Stat.Ann. art. 5069–1.02 (Vernon 1971) and art. 1302–2.09 (Vernon Supp. 1976). The trial court ruled in favor of plaintiffs, and defendant appealed. We hold that the trial court erred in rendering judgment for plaintiffs because the series of transactions leading up to the notes and other obligations sued upon by plaintiffs did involve the imposition of usurious interest rates that were more than double the rate authorized by law.[1] Accordingly, we render judgment for defendant and that plaintiffs shall take nothing, as mandated by article 5069–1.06(2).

The first transaction in the series was a guaranty by defendant Skeen of three promissory notes by Crescent General Corporation to plaintiff Mobile Dealers of America. Mobile had previously advanced to Crescent $325,000 and had taken three notes of Crescent, one for $250,000, another for $75,000, both bearing interest at nine percent, and a third note for $100,000, bearing no interest. Each of the three notes was payable in December 1971, except for one payment of $20,000 which was made in June 1971. In August 1971 the three notes were cancelled, and three new notes totaling $425,000 were issued by Crescent to Mobile, although no additional money was advanced by Mobile to Crescent. The new notes included one for $175,000 and another

---

1. The following is a summary of the transactions involved in this suit:

March 4, 1971—Crescent received $325,000 from Mobile Parks of America
Crescent issued three notes:

| | |
|---|---|
| $250,000 | interest-bearing, secured note |
| 75,000 | interest-bearing, secured note |
| 100,000 | noninterest-bearing, unsecured note |
| $425,000 | Total obligation |

June 30, 1971—Crescent paid $20,000 installment on $100,000 note.

August 2, 1971—Three notes of March 4, 1971 were cancelled. No new money advanced, but additional $20,000 obligation in new notes, infra.
Crescent issued three new notes—all unsecured and guaranteed by Skeen:

| | |
|---|---|
| $175,000 | |
| 170,000 | |
| 80,000 | |
| $425,000 | Total obligation |

September 15, 1971—Crescent paid $175,000 note

December 15, 1971—Remaining two notes of August 2, 1971 were cancelled.
No new money advanced, but $20,000 extension fee charged. Crescent borrowed $50,000 from Skeen; applied same to reduce balance under old notes
Crescent issued two new notes personally guaranteed by Skeen:

| | |
|---|---|
| $120,000 | |
| 100,000 | |
| $220,000 | Total obligation |

February 28, 1972—Skeen received $300,000 from Slaviks "Put-call" agreement for $360,000 payback.

March 5, 1973—Skeen paid $50,000 to Slaviks under "put-call" agreement
Skeen paid $5,000 to Passman; releases exchanged; no new money
Skeen issued two new notes:

| | |
|---|---|
| $310,000 | To Slaviks per "put-call" agreement |
| 235,950 | To Mobile Parks of America per Crescent obligation |
| $545,950 | Total obligation |

for $170,000, both bearing interest at nine percent, and a third for $80,000 bearing no interest. Since $20,000 had already been paid on the original $425,000 owed by Crescent to Mobile (of which only $305,000 represented funds actually advanced), the August transaction increased Crescent's ostensible indebtedness to Mobile by $20,000 without any money changing hands. These were the notes guaranteed by Skeen.

In September, Crescent paid off the $175,000 note, leaving an outstanding debt of $250,000 plus some interest. In December 1971 Crescent paid Mobile $50,000, reducing the outstanding balance to $200,000. The two remaining notes were then cancelled, and Crescent executed two new notes to Mobile in the amounts of $120,000 and $100,000, both bearing interest at nine percent, thus increasing the balance by $20,000 without any money changing hands from Mobile to Crescent. Plaintiff E. R. Slavik testified that the two $20,000 increases in indebtedness involved in the August and December renegotiations were fees charged by Mobile to Crescent for the service of extending the loans. Both of these notes were likewise guaranteed by Skeen.

In February of 1972 Skeen and the Slaviks entered into what they characterized as a "put and call" agreement, whereby the Slaviks paid Skeen $300,000 for stock in Crescent and also in International World Encyclopedia Corporation, subject to the Slaviks' right to demand repurchase of the stock by Skeen for $360,000. E. R. Slavik testified that this provided him and his brother with a $20,000 to $60,000 "margin" to compensate them for the risks they were taking by entering into this agreement.

In March 1973 the parties entered into a new agreement which plaintiffs contend was a settlement of all existing claims. The agreement expressly provided that Skeen and Crescent release Mobile and the Slaviks from all liability for any causes of action which may have accrued up to that date, including usury claims growing out of the loan transactions and "put and call" agreement outlined above. Under the set-

tlement agreement Skeen paid $50,000 to the Slaviks and $5,000 to the Slaviks' attorney, and signed two notes, one for $310,000 payable to the Slaviks bearing seven and a quarter percent interest, and another for $235,950 payable to Mobile bearing interest at six and a quarter percent. No money was paid by the Slaviks or Mobile for these notes. Defendant argues that the $310,000 note was merely a continuation of the $360,000 obligation under the "put and call" agreement minus the $50,000 payment of March 5, 1973, and that the $235,950 note represented a continuation of the $220,000 obligation incurred by Crescent as a result of the negotiations of December 1971 with the addition of accrued interest. Skeen made some payments on these notes, but eventually defaulted, whereupon plaintiffs brought this suit for $204,550 alleged to be owed by Skeen to the Slaviks, plus interest accrued thereon, $173,825 alleged to be owed by Skeen to Mobile, plus interest accrued thereon, foreclosure on the collateral for these notes, and attorneys' fees.

On appeal, defendant contends that the original loan agreement, the extension fees, and the "put and call" arrangement were all usurious loan transactions and that the settlement and release agreement of March 1973 can have no effect upon the usury because that agreement carried forward the usurious obligations originally contracted for in March 1971 and February 1972. Defendant further contends that because he is not obligated to pay these usurious debts, foreclosure on the collateral based on his default was error, as was the trial court's award of attorneys' fees to plaintiffs. Defendant has not claimed any attorneys' fees, either in the trial court or in this court, nor has he claimed any penalty for the alleged usury other than by way of defense to the notes sued upon.

Plaintiffs contend that the existence of usury is a fact issue which was presumptively found by the trial judge in favor of plaintiffs and that, in the absence of findings of fact or conclusions of law, which were not requested by the defendant, the trial court's conclusion on the usury issue is

a fact finding, binding upon this court on appeal. Plaintiffs further contend that in order successfully to assert the defense of usury, defendant has to satisfy a burden of proof to show that there was a scheme to charge usury in the absence of notes which on their face proved usury. Plaintiffs also assert that they could charge fees for loans apart from interest without violating usury laws and that the settlement and release agreement of March 1973 cleansed the transactions of any usury which may have existed in the earlier agreements, thereby denying defendant his usury defense to the notes issued as part of the settlement and release agreement.

■ We turn to plaintiffs' first contention that, in reviewing the trial court's judgment, we must presume findings in support of the judgment if supported by any evidence. It is true that, in the absence of a jury verdict or any express findings of fact and conclusions of law by the trial court, we must presume all fact findings in favor of the trial court's judgment; however, where the evidence establishes as a matter of law facts inconsistent with the judgment, the presumption cannot be effective, and we must overturn the trial court's judgment. *Lockhart v. Garner*, 156 Tex. 580, 298 S.W.2d 108, 110 (1957).

Additionally, plaintiffs argue that because the March 1973 notes do not call for usurious interest rates upon their faces, defendant must establish that there was a corrupt agreement or scheme to conceal the usury which was contemplated by plaintiffs, citing *Moss v. Metropolitan Nat'l Bank*, 533 S.W.2d 397 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d 578 (Tex.Civ.App.—Dallas 1975, writ ref'd n. r. e.); *Wagner v. Austin Savings and Loan Ass'n*, 525 S.W.2d 724 (Tex.Civ.App.—Beaumont 1975, no writ). All of these cases are distinguishable on their facts. In the *Moss* case, the borrowers paid fixed sums to three parties other than the lender in addition to the ten percent interest paid to the lender on the loan. The court refused to find usury in

that case because the borrowers stipulated that the payees of the fees were not agents of the lender and there was no showing of a scheme whereby the payments to third parties actually accrued to the lender's benefit. *Moss v. Metropolitan Nat'l Bank*, 533 S.W.2d at 399. In the *American Century* case, a corporation signed a note on behalf of an individual borrower and the note provided for interest in excess of the rate allowed for personal loans but within the rate allowed for corporate loans. This court refused to find usury in that transaction where there was no showing that the lender was aware that the borrower was an individual rather than a corporation when it made the loan. *American Century Mortgage Investors v. Regional Center, Ltd.*, 529 S.W.2d at 583. In the *Wagner* case, the court held that premiums paid to the lending savings and loan over and above interest on a loan were not usury because these fees were specifically authorized by Tex. Rev.Civ.Stat.Ann. art. 852a § 5.07 (Vernon 1964). *Wagner v. Austin Savings and Loan Ass'n*, 525 S.W.2d at 728.

■ The cases cited above are inapposite because here plaintiffs admitted at trial that they were charging fees solely as compensation for the service of lending money, and the amounts of the fees charged are in excess of the legal interest rates. Since these facts are indisputably established by the record, defendant has satisfied his burden of proof to show an agreement to loan money at usurious rates of interest. Plaintiff E. R. Slavik himself testified that, in exchange for Crescent's $425,000 in promissory notes, Mobile loaned Crescent only $325,000 at nine percent interest and that the extra $100,000 obligation was owed to Mobile for use of Mobile's credit in obtaining the money and for undertaking the risk in lending the money to Crescent. Thus, Slavik's own description of the transaction establishes that the $100,000 was interest, as it is defined by Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a) (Vernon 1971), which provides: "'Interest' is the compensation allowed by law for the use or forbearance or detention of money . . . ." *Greever v.*

*Persky,* 140 Tex. 64, 165 S.W.2d 709 (1942). Under the terms of the original March 1971 transaction, Crescent was obligated to pay almost forty percent interest within a nine-month period on the $325,000 it had borrowed from Mobile, which is more than twice the eighteen percent annual rate of interest authorized for payment by corporations under Tex.Rev.Civ.Stat.Ann. art. 1302–2.09 (Vernon Supp.1976). Moreover, the two later extensions of the indebtedness resulted in two more charges of $20,000 each against Crescent without any additional money changing hands. These charges, which E. R. Slavik testified were consideration for Mobile extending the loans, likewise, were interest within the statutory definition. *Greever v. Persky, supra.* The true rate of interest contracted for the $325,000 loan was well in excess of the statutory limit. Accordingly, we hold that, as a matter of law, the notes sued upon are usurious and unenforceable.

■ Plaintiffs further contend that they can legally exact an additional "and distinctly separate" consideration for lending the money without violating the usury laws, citing *Gonzales County Savings and Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex. 1976). Although that case does recognize that certain types of fees may be charged in connection with the creation of options to borrow, apart from the interest charged for the making of the loan, where, as in this case, a charge is admittedly compensation for the use, forbearance, or detention of money, it is, by definition, interest regardless of the label placed upon it or the artfulness with which it is concealed. Indeed, the supreme court in *Gonzales Savings* held that we must look beyond the superficial appearances of the transactions to their substance in determining the existence or nonexistence of usury.

■ Plaintiffs also contend that this usury has nothing to do with their lawsuit against Skeen because these loans were made to Crescent, not to Skeen. We cannot agree. In March 1973, when Skeen issued his personal note to Mobile for $235,950, it is apparent from the sums involved that Skeen was assuming the indebtedness of Crescent to Mobile carried through the various transactions from March 1971, outlined above. This indebtedness must, therefore, have necessarily included the usurious interest charges against Crescent. *First Nat'l Bank of Montague v. Waybourn,* 81 Tex. 57, 16 S.W. 554 (1891); *Keltner v. Glenn,* 81 S.W.2d 1051 (Tex.Civ.App.—Austin 1935, no writ); *Burton v. Stayner,* 182 S.W. 394, 395 (Tex.Civ.App.—San Antonio 1916, writ ref'd).

■ Plaintiffs also argue that this earlier usury should have no bearing on the outcome of this litigation because it all occurred before the release and settlement agreement of March 1973, citing *Commerce Trust Co. v. Ramp,* 135 Tex. 84, 138 S.W.2d 531 (1940), and *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 516 S.W.2d 136 (Tex.1974). However, as those cases hold, the fact that these notes were executed before Skeen personally assumed the obligations and before the alleged release and settlement agreement cannot erase the impact of the usury where it is apparent that the usurious charges were carried forward into Skeen's obligations to Mobile after the settlement agreement without advancement of any additional funds to Skeen. *Southwestern Investment Co. v. Hockley County Seed & Delinting, Inc.,* 516 S.W.2d 136, 137 (Tex.1974); *Commerce Trust Co. v. Ramp,* 135 Tex. 84, 138 S.W.2d 531, 534 (1940). We hold, therefore, that Skeen does have standing to assert the defense of usury against Mobile on the $235,950 note, notwithstanding the release and settlement agreement, because an examination of the transactions leading up to the issuance of that note indicates that it carried forward a usurious interest obligation at more than double the rate authorized by law.

■ We turn now to the $310,000 note issued by Skeen to the Slaviks in March 1973 after the release and settlement agreement. Under the "put and call" agreement, Skeen "sold" blocks of shares in Crescent and International World Encyclopedia to the Slaviks for $300,000. However, the

agreement provided that the Slaviks could call upon Skeen at any time to repurchase the stock for $360,000. That agreement was entered into in February 1972. Skeen paid the Slaviks $50,000 and issued a note to the Slaviks for $310,000 at the same time that he signed the release and settlement agreement. Instead of purging the transaction of previous usurious interest, this arrangement added more usurious interest by charging interest on notes which carried forward earlier usurious charges. We construe the "put and call" agreement as a loan to Skeen, since he had an absolute obligation to repay the $300,000 advanced to him for the stock, plus $60,000. Under these circumstances, we must hold that the $60,000 constitutes interest for the use of the $300,000 at twenty percent, more than twice the rate of interest allowed for personal loans under article 5069–1.02 (Vernon 1971). *Johns v. Jaeb*, 518 S.W.2d 857 (Tex. Civ.App.—Dallas 1974, no writ). After the payment of $50,000, the $310,000 note plainly carries forward the original obligations under the "put and call" arrangement, notwithstanding the release and settlement agreement. As we discussed with respect to the Mobile note, the fact that the new note was issued by Skeen for $310,000 pursuant to the release and settlement agreement does not prevent Skeen from raising the usury defense where it is apparent from the amounts in the transactions involved that this note carries forward the usury of the original agreement. *Commerce Trust Co. v. Ramp*, 135 Tex. 84, 138 S.W.2d 531, 534 (1940).

In light of our holdings that both of the promissory notes sued upon by plaintiffs are tainted by usurious interest in excess of twice the rate authorized by the law, we must conclude that Skeen has no liability for the remaining principal and interest on either of the notes under article 5069–1.-06(2) (Vernon 1971) and that the judgment of the trial court granting damages, foreclosure on the collateral, and attorneys' fees, based on such liability, must be reversed. Accordingly, we reverse the judgment of the trial court and render judgment that plaintiffs take nothing.

Reversed and rendered.