**ROLLINGBROOK INVESTMENT COMPANY, Appellant,**

v.

**TEXAS NATIONAL BANK OF BAYTOWN, Appellee.**

No. 07–89–0057–CV.

Court of Appeals of Texas, Amarillo.

May 15, 1990.

Rehearing Overruled June 22, 1990.

Michael C. O'Connor, O'Connor, Wisner, Craig & Young, P.C., Houston, for appellant.

Decatur J. Holcombe, Royston, Rayzor, Vickery & Williams, Houston, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

POFF, Justice.

Appellant Rollingbrook Investment Company ("Rollingbrook") brought an action founded in usury against appellee Texas National Bank of Baytown (the "bank"). Both Rollingbrook and the bank filed motions for summary judgment. The bank's motion for summary judgment was granted and Rollingbrook's motion for summary judgment was overruled. By three points of error, Rollingbrook contends first, that a 3% fee collected by the bank was not a bona fide commitment fee, but rather was interest, and as such was usurious; second, that neither the usury savings clause in the note nor the subjective intent of the parties excused the bank from charging and receiving usurious interest; and third, that the bona fide error defense is not available to excuse charging and receiving usurious interest. For the reasons below, we will overrule Rollingbrook's points of error and affirm the judgment of the trial court.

On May 15, 1987, the bank issued a commitment letter to Rollingbrook in which it offered to renew, rearrange, and extend the unpaid balance of a $962,771.43 note executed in October 1986. The letter set out the terms of the offer and stated that the offer was good for 90 days. On the day the letter was issued, the note was already in default and the bank had taken steps to foreclose under the deed of trust securing the note. On May 20, 1987, Rollingbrook accepted the bank's offer and paid a 3% fee, amounting to $28,883.14, as required by the commitment letter. On June 18, 1987, Rollingbrook exercised its rights under the commitment letter, and executed and delivered the note described in the letter.

Rollingbrook made subsequent monthly installments as provided in the note. On September 30, 1987, the note was paid in full. Rollingbrook later brought this action claiming the 3% fee was interest and that, when added to the interest paid under the note, was usurious.

The primary issue before the court is whether the 3% fee collected by the bank in May 1987 was a bona fide commitment fee or interest. In *Gonzales County Savings and Loan Association v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976), the court held:

[A] fee which commits the lender to make a loan at some future date does not fall within this definition [of interest]. Instead, such a fee merely purchases an option which permits the borrower to enter into the loan in the future. It entitles the borrower to a distinctly separate and additional consideration apart from the

lending of money. Therefore, the lender may charge extra for this consideration without violating the usury laws. (citations omitted)

In *Stedman v. Georgetown Savings and Loan Association*, 595 S.W.2d 486, 489 (Tex.1979), the Supreme Court held that a bona fide commitment fee is not interest within the contemplation of Tex.Rev.Civ. Stat.Ann. art. 5069–1.01(a) (Vernon 1987), and went on to state:

> In any event the reasonableness of the amount charged would not constitute usurious interest since it was consideration for a bona fide commitment fee. For usury to apply there must be an overcharge by a lender for the use, forbearance or detention of the lender's money. Where the evidence establishes that the charge was made for the commitment option, it would not be for the use, forbearance or detention of the lender's money so as to constitute interest. Rather, the borrower has bought the right to secure a loan if he later decides he wants it. As long as the charge is made for a bona fide commitment fee, it cannot form the basis of a usury penalty against the lender.... *Crow v. Home Savings Association of Dallas County*, 522 S.W.2d 457 (Tex.1975).

Rollingbrook argues that for a commitment fee to be bona fide it must be a commitment to make a new loan. Rollingbrook further argues that since it did not pay the 3% fee for the option to obtain a new loan, but solely to renew the balance of an existing debt, the loan is not a new loan. The bank argues that the fee is not interest because the fee was intended only as compensation for having the future loan available. The evidence is clear that it was never the parties' intent for the bank to permanently finance Rollingbrook's development. The parties also agree that the original note contained no right of renewal. The commitment letter was merely an option to secure a loan if Rollingbrook could not find other financing.

■ The first prong of Rollingbrook's argument is that all reported cases holding a commitment fee to be bona fide deal with new loans. The second prong of Rollingbrook's argument is that a fee paid to renew a loan is nothing more than money paid for the forbearance of an existing obligation. The obligation is already due, and the money is paid to compensate the obligee for postponing payment. Rollingbrook cites a consumer finance case, *Meyer v. Mack Sales, Inc.*, 645 S.W.2d 493 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.) and a past due account case, *Tygrett v. University Gardens Homeowners' Association*, 687 S.W.2d 481 (Tex.App.—Dallas 1985, no writ). These cases discuss fact situations wherein a debt was due or past due and the parties agreed to extend the time of payment. The cases state that any fee charged for the extension of payment is a forbearance, and therefore interest. *Meyer v. Mack Sales*, 645 S.W.2d at 495. *See also Parks v. Lubbock*, 92 Tex. 635, 51 S.W. 322 (Tex.1899). Rollingbrook argues that renewal of its loan was nothing more than forbearance, and was therefore interest.

The commitment fee cannot be analogized to a late fee as in *Tygrett* because the fee bore no relation to the existing debt under the original note. Whether Rollingbrook accepted the offer of a new loan did not affect the prior obligation. The bank never agreed to grant Rollingbrook additional time to repay the note. During the time taken by Rollingbrook to ponder the bank's offer of a new loan, Rollingbrook was obligated to pay a higher rate of interest under the original note to compensate the bank for delinquent payments. Under these facts, the bank's action in renewing the note was not an act of forbearance.

We decline to accept Rollingbrook's theory that a new loan requires the advancement of new money. In this case, the June 1987 loan was based upon a newly executed note and deed of trust. The June 1987 note differed from the October 1986 note not only in the amount due and the maturity date, but also in the interest rate and the amount of monthly payments. The transaction should be contrasted with a situation in which a borrower and a lender agree to extend the maturity date by merely altering or adding an addendum to an existing

note. The fact that the bank did not make new funds available to Rollingbrook did not make the 3% fee interest.

The fee was in the nature of a 90–day option to borrow money. In exchange for payment of the fee, the bank agreed to make a loan within 90 days that it was not otherwise obligated to make. By making the commitment, the bank gave up its right to have the funds repaid if the option was exercised, thus giving up the opportunity to reinvest the funds. Until the offer of the commitment, Rollingbrook had no right to renew the loan. The benefit derived by Rollingbrook by exercising the option was entitlement to $955,000.00. Absent the option, Rollingbrook would have been obligated to repay the previous loan from its own resources, or secure financing from a new source.

■ We also decline to accept Rollingbrook's argument that, under the Fifth Circuit's holding in *Imperial Corp. of America v. Frenchman's Creek Corp.*, 453 F.2d 1338 (5th Cir.1972), the 3% fee was not paid for a future loan. The fact that the loan was made after acceptance of the commitment letter and payment of the fee differentiates this case from *Frenchman's Creek* in which the obligation to pay the fee arose after the loan agreement. In this case, the commitment letter was accepted by Rollingbrook and the fee paid on May 20, 1987. The loan was not agreed to until Rollingbrook exercised its option on June 18, 1987. The commitment fee in this case was a fee charged for a promise to make a loan in the future. The commitment agreement entitled Rollingbrook to a unique and additional consideration apart from the use of money, giving it the option to enter a loan agreement in the future.

Accordingly, Rollingbrook's first point of error is overruled. Because we hold that the commitment fee was not interest, Rollingbrook's second and third points of error concerning the bank's usury defenses present nothing for review and are also overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

On motion for rehearing appellant reurges his contention that a commitment fee he was charged for the option to renew a loan was interest. He contends absent the advance of "new monies" the option to renew is no more than an extension of the loan.

■ We first note that commitment fees are not by operation of law front-end interest. *Gonzales County Savings and Loan Assn. v. Freeman*, 534 S.W.2d 903 (Tex.1976). As pointed out in *Gonzales* at page 906, a true commitment fee purchases an option which permits the borrower to enter into a loan in the future, which is a distinctly separate consideration and additional consideration from the loaning of money. The loan and the obligation to pay the fee must arise before the parties enter into the loan agreement. Although the *Gonzales* case involved an original loan as opposed to the making of a subsequent loan, in looking to *Gonzales* for guidance we find the operative words to be "enter into a loan in the future", "distinctly separate consideration", and the fee is to be paid before the loan is made. We see no requirement that in order for the fee to be a bona fide commitment fee, new money must be loaned. Nor do we read *Gonzales* to require the future loan to be an original loan as opposed to a refinancing of an existing loan.

For authority in his motion for rehearing, appellant additionally cites *Laid Rite Inc. v. Texas Industries, Inc.*, 512 S.W.2d 384 (Tex.Civ.App.—Fort Worth 1974, no writ) and *Skeen v. Slavik*, 555 S.W.2d 516 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Both *Laid Rite* and *Skeen* held a commitment fee for extending existing indebtedness to be interest. As we noted in our original opinion we agree that if the fee is paid merely for an extension of the debt the fee is not a bona fide commitment fee.

■ In *Laid Rite* the borrower, Russell, renewed certain notes of his own and other parties. The court noted that, "the record is undisputed ... that as additional charge for the use of the money involved in those

two loans, Russell would pay S.F.C. as a commitment fee, $175.00 per lot." The debtors S.F.C. and T.X.E. admitted in their briefs that this commitment fee was interest. The fee was paid contemporaneously with the extension and execution of the loans and no option was given in the case. Appellant cites the *Gonzales* court's comment that the fee involved in *Laid Rite* was not a true commitment fee for it was not given in return for an option to enter into a loan in the future. Under the facts of *Laid Rite* we saw no need to cite the case in our original opinion, since in *Laid Rite* no option was given and the parties admitted the commitment fee was really interest. The holding of *Laid Rite* as noted in *Gonzales* is not applicable to a case involving an option to secure a future loan. When an option is given to make a loan, the test as to whether the fee charged is in fact a bona fide commitment fee rather than interest is what rights and obligations are created as a result of the purchase of the option, not whether a new loan is made or "new money" advanced.

Appellant cites *Skeen* for his premise that additional money must change hands for the fee not to be classified as interest. The *Skeen* court did note that twice upon renewal of the notes the holder of the notes added a renewal fee without any additional money changing hands. In *Skeen*, however, there was never an option given before the notes were renewed and the renewal charges were made contemporaneously with the renewal. Also in *Skeen* the renewal charges were admitted by the lender to be consideration for extending the loans. In this instance, the facts before us distinguish this case from *Skeen* and we see no conflict between our decision and the *Skeen* decision.

█ Appellant also argues that the bank's declination to proceed with foreclosure was the real consideration for the commitment fee. Therefore appellant contends the letter of commitment acted only as an extension of the loan. We find nothing in the commitment letter which obligated the bank to forego foreclosure during the time period covered by the option, nor is there any language specifically extending the note. We disagree with appellant that the bank's expressly preserving in the commitment letter its right to collect the 18% interest on the past due note made the commitment letter an extension by implication. The appellant was obligated under the terms of the note to pay the 18% interest whether the note was foreclosed or a new loan was made. Neither party's rights were affected by this language in the commitment letter.

We find no authority for appellant's contention that an option given to renew a note in default is in fact an extension of the note. Consequently, under these facts we conclude that the fee paid for the option to make another note was in fact a bona fide commitment fee and not interest. We further conclude that the trial court correctly denied appellant's usury claim. The motion for rehearing is overruled.