**Armando Fong NAJARRO and Compania Financiera Libano, S.A., Plaintiffs–Appellees,**

v.

**SASI INTERNATIONAL, LTD., and Suzanne Frame, Defendants–Appellants.**

No. 89–2731.

United States Court of Appeals, Fifth Circuit.

July 6, 1990.

Rehearing Denied Aug. 22, 1990.

---

Charles A. Sharman, Brown Maroney & Oaks Hartline, Houston, Tex., for defendants-appellants.

Keith G. Fabrizi, J.C. Trotter, Trotter, Trotter & Fabrizi, Houston, Tex., James L. Branton, San Antonio, Tex., for plaintiffs-appellees.

Before CLARK, Chief Judge, WISDOM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Plaintiffs Armando Fong Najarro and Compania Financiera Libano, S.A. (CFL), advanced funds to defendants SASI International, Ltd. (SASI), and its primary shareholder, Suzanne Frame, who ran a "gray market" perfume importing business. The agreement included a commitment by Frame and her company to pay, in addition to the principal, so-called "commissions" equal to a 25% annual return on the principal. When defendants failed to pay on six of the promissory notes, plaintiffs sued for $500,000, the face amount of the notes.

After first unsuccessfully claiming lack of jurisdiction, defendants now assert that the agreement under which money was advanced was usurious. The district court rejected this claim on summary judgment, holding that there was no loan, and, alternately, no scheme to charge usury. We reverse and remand.

I.

Through published offerings and commissioned brokers, defendants solicited plaintiffs and other investors to participate with them in the business of purchasing European gray market perfume for resale in the United States. Plaintiffs CFL and Najarro, its president, tendered a total of $500,000 to Tenham Company, N.V. (Tenham), for which defendants signed six promissory notes. According to defendants, the money received by Tenham and later by SASI was used by those companies to purchase goods, principally brand-name perfumes, for importation into the United States.

Defendants assert that the notes they gave plaintiffs were structured so as to yield to plaintiffs a 25% annualized rate of return on principal, payable in cash every six weeks. According to defendants, from September 1985 through November 1986, when each note became due at the end of a respective six-week period, the principal amount was rolled over, the "commission" of 25% was paid, and new notes were issued. A total of 56 such notes were eventually issued. Beginning in May 1986, SASI replaced Tenham as obligor on the notes.

Defendants further maintain that each note was issued with a cover letter stating

the principal amount, the due date, and a promise to pay a sum equal to an annualized 25% of the principal amount as a "commission." This information was not on the notes themselves, which made no mention of interest or "commissions."

In February 1987 plaintiffs brought this action seeking recovery of the $500,000 principal, together with pre- and post-judgment interest and attorneys' fees. Defendants filed a motion to dismiss for lack of subject matter jurisdiction and conducted limited discovery on that issue only.

Plaintiffs then moved for summary judgment on the face amount of the six promissory notes then remaining unpaid. Defendants asserted the affirmative defense of usury in response and filed a cross-motion for summary judgment. The court granted plaintiffs' motion and denied defendants'. The court held that there was no evidence before it "that a loan was made or intended between the parties" and that "[t]he summary judgment proof demonstrates that there was no loan of money, which is essential and requisite to a usury defense."

The court also determined that under Texas law, a party asserting a claim of usury involving promissory notes not usurious on their face must show that "there was a corrupt agreement or scheme to cover usury and that such an agreement or scheme was in full contemplation of the parties." The court then observed that the notes did not have any rate of interest on their face and that "[d]efendants have not provided any summary judgment proof which supports that such a scheme to charge usury existed." The court also imposed sanctions on defendants and their counsel after concluding that a second affidavit by Frame, a director and the principal shareholder in Tenham and SASI, was in bad faith or a fabrication and that the usury defense had been asserted in bad faith or only for the purpose of delay.

## II.

We apply the standard for summary judgment enunciated in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986):

Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

In their response to plaintiffs' summary judgment motion, defendants rely upon the affirmative defense of usury, on which they will bear the burden at trial unless the transaction is determined to be usurious on its face. Where the nonmoving party will bear the burden of proof at trial, *Celotex* instructs,

... a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule,' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Id.* at 324, 106 S.Ct. at 2553.

■ Under Texas law, usury is defined as "interest in excess of the amount allowed by law." Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(d). The essential elements of a usurious transaction are (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982). Where the transaction appears lawful on its face, the party claiming usury has the

burden of proof. *American Century Mortgage Investors v. Regional Center, Ltd.,* 529 S.W.2d 578, 583 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). On the other hand, where the loan instruments show on their face that the loan is usurious, the lender has the burden to prove that the terms of the loan resulted from accidental and bona fide error. *Miller v. First State Bank,* 551 S.W.2d 89, 99 (Tex.Civ.App.—Fort Worth 1977), *modified on other grounds,* 563 S.W.2d 572 (Tex.1978).

### A.

The district court's first ground for granting summary judgment for plaintiffs and rejecting defendants' usury defense was that there was no evidence before the court that a loan was made or intended between the parties. The court based its finding largely upon Frame's earlier affidavit testimony. In her first affidavit, filed in support of defendants' motion to dismiss for lack of subject matter jurisdiction and submitted before the usury defense was raised, Frame explained that there was no agreement that "the monies funded to Tenham were ever intended to be anything other than an investment. They were never intended to be a loan." Additionally, in response to requests for admissions, Frame, on behalf of SASI, stated that "[t]here was no borrowing or lending to default on the document. It was invested with SASI International Ltd." [1] Plaintiffs submitted this affidavit in reply to defendants' response to plaintiffs' motion for summary judgment, in which defendants had filed a second and arguably contradictory affidavit by Frame in which the subject statements were deleted. [2]

On appeal, defendants in turn point to the first affidavit of John Trotter, which he executed, as trustee and counsel for Najarro and CFL, in response to defendants'

motion to dismiss for want of jurisdiction. The Trotter affidavit, attached to plaintiffs' first amended complaint, states in part that "[t]he [original] action was brought after these funds were loaned to the named Defendants, SASI ... and Frame, as evidenced by the promissory notes.... These funds that were loaned to the Defendants are owned by [CFL]." However, Trotter asserted through later affidavits that the funds "were never intended or contemplated to be loans or for the use of money, but were for the specific commercial purpose of facilitating the ongoing business transactions of buying European goods for resale."

■ We conclude that none of these affidavits presents any relevant summary judgment evidence on the issue of the loan. [3] Under Texas usury law, "in determining whether a loan transaction is usurious, it is substance rather than form that is investigated." *Fears v. Mechanical & Indus. Technicians, Inc.,* 654 S.W.2d 524, 530 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). In *Gonzales County Sav. & Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976), the court, in determining whether certain charges constituted interest under the usury laws, stated, "Charges which are in fact interest remain so, regardless of the label used." The court in *Skeen v. Slavik,* 555 S.W.2d 516, 521 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.), further expounded on this principle:

> [W]here ... a charge is admittedly compensation for the use, forbearance, or detention of money, it is, by definition, interest regardless of the label placed upon it or the artfulness with which it is concealed. Indeed, the Supreme Court in *Gonzales Savings* held that we must look beyond the superficial appearances of the transactions to their substance in

---

**1.** At this earlier stage of the case, the defendants, rather than asserting usury, apparently were attempting to avoid liability by arguing that there was no enforceable obligation on Frame or SASI to repay the funds advanced.

**2.** This revision formed much of the basis for the district court's imposition of sanctions.

**3.** This determination obviates any need for us to consider plaintiffs' claim that the Trotter affidavit, when presented by the defendants in support of their usury claim, was never properly before the court.

determining the existence or nonexistence of usury.

Just as the label placed upon a charge by the parties will not control the determination of whether that charge is interest, so a label placed upon the transaction by the parties should not control the determination of whether that transaction is a loan. Where the terms of the written contract between the parties unambiguously constitute a loan, and the parties have presented no evidence to show that the terms of that contract are not valid and enforceable, the name that the parties give to that contract is irrelevant for purposes of determining whether there was a loan for purposes of the usury laws.

### B.

It is uncontested that plaintiffs advanced money to defendants on numerous occasions and that on each occasion, as a precondition to receiving that money, defendants signed a promissory note in an amount equal to the sum of money received. These notes, the last six of which total $500,000 in principal, remain unpaid and form the basis of this suit. Each note reads, "Six weeks after [date], for value received, I, we, or either of us, the undersigned, promise to pay to the order of John C. Trotter, Trustee for Armando Fong Najarro [the amount] Dollars at [left blank] with [left blank] per cent interest per annum from [left blank] until paid." All were signed by Frame on behalf of SASI.

In determining whether there was a loan, we rely upon *Johns v. Jaeb*, 518 S.W.2d 857 (Tex.Civ.App.—Dallas 1974, no writ), which is controlling on this issue. There, the court stated,

> When money is advanced to enable one to engage in a business venture with the understanding that the advance and an added amount are to be returned, there is a loan, and the added amount is interest, which may not exceed the statutory maximum, regardless of the form of the transaction. Here the documents show an absolute obligation on the part of plaintiff to repay the amount advanced, together with an additional amount.

*Id.* at 859 (citations omitted). *Accord Maxwell v. Estate of Bankston*, 433 S.W.2d 229, 232 (Tex.Civ.App.—Texarkana 1968, no writ).

Therefore, even if plaintiffs' argument and affidavits showing that the advance of money was meant to be a business investment rather than a loan are taken as entirely true, the substance of the transaction is such that it is nonetheless considered a loan, as there is here indisputably an absolute obligation to repay the principal, as evidenced by the promissory notes. As the court stated in *Maxwell*, "the evidence in our opinion conclusively evidences a loan as distinguished from an advance of working capital to a joint adventure, because there was an absolute agreement between the parties that the principal was to be repaid." *Id.* at 233.

■ Where it is uncontradicted, as here, that the substance of the transaction included an advance of money with an absolute obligation to repay, it is irrelevant whether the parties intended such a transaction to be classified as a loan. Where there was no mistake as to the terms of the agreement, a mistake in supposing that the contract was not usurious will not authorize reformation of that contract. *See Bexar Bldg. & Loan Ass'n v. Seebe*, 40 S.W. 875 (Tex.Civ.App. 1897, writ ref'd). Hence, we find that in the instant case the first two elements of usury—the existence of a loan and an absolute obligation to repay—were present.

### III.

Plaintiffs do not appear to dispute that cover letters were attached to each of the promissory notes and read, in pertinent part, as follows:

> As agreed, we will receive from you on [date 1] [x dollars] to purchase perfumes from Europe.
>
> SASI International Ltd. will in return pay you the full amount of [x dollars] on [date 2] and an additional sum of [y dollars], which is your commission. Enclosed is a promissory note covering this transaction.

Each letter was signed by Frame, and date 1, which was always the same as the date of the promissory note, in each instance preceded date 2 by exactly six weeks; date 2 was the due date of the corresponding promissory note. Also, in each case, the amount "y" was equal to $^{42}/_{365}$ times .25 times x. Therefore, "y" was in each case equal to a 25% annualized rate of return on amount "x".

Thus, the summary judgment evidence shows that the entire agreement of the parties consisted of the payment of money by plaintiffs to defendants in consideration for (1) the issuance by defendants of promissory notes in the same amount to plaintiffs and (2) defendants' payment to plaintiffs of sums denominated as "commissions" in amounts equaling 25% per annum of the principal amounts.

■ Moreover, plaintiffs did not perform any services for defendants other than the advance of money. As the court explained in *Maxwell,*

> In determining the question of usury all devices are disregarded, and whenever the courts are satisfied that there is a charge contracted for, *merely for the use of money,* in excess of that allowed by law as interest, they treat it as usurious, though usury may be covered under the guise of some additional and different consideration.

433 S.W.2d at 231 (emphasis added). Indeed, a charge made for the use, forbearance, or detention of money is interest, regardless of the label placed upon it or the artfulness with which it is concealed. *Skeen,* 555 S.W.2d at 521. The "commission" is just such a charge for the use of money.

■ Furthermore, the commissions were paid by defendants directly to the lenders, i.e., the plaintiffs, and not to a third-party broker. A party who merely lends his own money will not avoid a finding of usury by charging a fee or commission. *See O'Connor v. Lamb,* 593 S.W.2d 385, 387 (Tex.Civ.App.—Dallas 1979, no writ). "[A] charge or a deduction in the making of a loan to pay to so-called commission or brokerage is nothing but a device for the collection of additional interest, where the charge is made by the lender himself." *Terry v. Teachworth,* 431 S.W.2d 918, 925 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Therefore, the "commissions" in the instant case necessarily constitute interest.

### IV.

■ As an alternative ground for granting summary judgment, the district court held that, since the notes are not usurious on their face, defendants had the burden to show that usury was intended but failed to meet this burden when they provided no "summary judgment proof which supports that such a scheme to charge usury existed." The court relied upon two Texas appellate opinions. In *Moss v. Metropolitan Nat'l Bank,* 533 S.W.2d 397, 399 (Tex.Civ. App.—Houston [1st Dist.] 1976, no writ), the court stated that where a note is not usurious on its face, the borrower must show a "corrupt agreement or scheme to cover usury and that such agreement or scheme was in full contemplation of the parties." *See also Greenway Bank & Trust v. Smith,* 679 S.W.2d 592, 597 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (citing *Moss*).[4]

■ We observe first that in the cases cited, the notes constituted the entire writing governing the transaction. Thus in those cases, where the *notes* were not usurious on their face, the burden was on the party asserting usury to show a corrupt agreement or scheme. However, where, as

---

4. However, where a contract is usurious on its face, proving a corrupt scheme is not necessary. *See Ashley v. Edwards,* 626 S.W.2d 107, 111 (Tex.App.—Houston [14th Dist.] 1981, no writ) ("[I]f the contract is unambiguous upon its face, the court cannot depart from the terms of the contract to make legal what the parties have made unlawful."); *Maxwell,* 433 S.W.2d at 233 ("'Where, indeed, the contract upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption, for the intent is apparent; res ipsa loquitur.'" (quoting *Bank of the United States v. Waggener,* 34 U.S. (9 Pet.) 378, 399, 9 L.Ed. 163 (1835)).)

in the case *sub judice*, the note does not constitute the entire contract, we believe that Texas courts would still find the transaction usurious on its face if some other documents, which constitute part of the transaction and do not contradict the note, establish usury on their face.[5] Thus, we can distinguish our case from *Moss* and *Greenway* on the basis of the cover letters that expressly show a 25% annualized return on the money lent. However, we need not rely only upon this distinction to reverse the summary judgment.

The district court erred in placing upon defendants the burden of showing on the part of plaintiffs a specific intent to commit usury. In *Alamo Lumber Co. v. Gold*, 661 S.W.2d 926, 928 (Tex.1983), the court declared, "[I]t is not the lender's subjective intent to charge usury that makes a loan usurious, but rather his intent to make the bargain that was made." In doing so, the court specifically rejected the argument that a specific intent to charge usury must be established where the documents do not show usurious interest on their face.

The court in *Alamo Lumber* cited its earlier decision in *Cochran v. American Sav. & Loan Ass'n*, 586 S.W.2d 849, 850 (Tex.1979) (citations omitted), where it stated,

> Intent in usury cases does not mean intent to charge a usurious rate of interest. Rather, it means intent to make the bargain made. The subjective intent of the lender is irrelevant if, in fact, the lender has contracted for, charged or received interest on a loan in excess of the maxi-

mum permitted by law. To avoid the penalties imposed by article 5069–1.06, the lender is required to plead, prove, and obtain a finding that his contract for, charge or receipt of usury was a result of accidental and bona fide error.

Plaintiffs have made no such showing of accidental and bona fide error. They also put forth no evidence to show that they did not intend to make the bargain they made; that is, plaintiffs fail to demonstrate that they did not intend to collect a 25% return.

Moreover, plaintiffs' claim that they never intended to charge usury is foreclosed by *Johns v. Jaeb*, 518 S.W.2d at 860, where the court stated, "Defendant insists that he never intended to charge usury, but his subjective intent is immaterial, since the intent of the parties is presumed to be reflected in the documents which they signed."[6] Accordingly, the summary judgment evidence demonstrates that plaintiffs intended to enter into a bargain that was usurious, and whether they intended specifically to charge usury is irrelevant.[7] As a consequence, under Texas law, the statutory penalties must be visited upon them.

## V.

In his affidavit, Trotter states, "If no profit was made on the resale, no commissions would be due, but the promissory notes would still be owed." Plaintiffs thus argue that any commission payments were contingent on a profit and hence should not constitute usurious interest. Some Texas courts indeed have espoused the proposi-

---

5. *See Tygrett v. University Gardens Homeowners' Ass'n*, 687 S.W.2d 481, 485 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) ("The question of usury must be determined by a construction of all the documents constituting the transaction, interpreted as a whole, and in light of the attending circumstances."); *Beavers v. Taylor*, 434 S.W.2d 230, 231 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.) ("All of the instruments referred to were executed simultaneously, and hence are construed as if contained in a single contract. None of the instruments upon their faces provided for the payment of more than the legal rate of interest, hence the contract is not usurious on its face" (citations omitted)).

6. *See also Ashley v. Edwards*, 626 S.W.2d 107, 111 (Tex.App.—Houston [14th Dist.] 1981, no

writ) ("The subjective intent of the parties is normally immaterial in determining whether there is usury since the intent of the parties is presumed to be reflected in the documents which they sign.").

7. In *RepublicBank Dallas, N.A. v. Shook*, 653 S.W.2d 278, 281–82 (Tex.1983), the court, in determining whether the transaction violated the usury laws, considered whether the borrower had a business purpose. However, this consideration did not affect the initial determination of whether the transaction was usurious, but only whether the corporate-shell borrower properly came within the exception to the usury statutes that permitted a higher interest rate for corporate borrowers.

tion that when the promise to pay a sum above legal interest depends upon a contingency, the loan is not usurious. *See, e.g., Pansy Oil Co. v. Federal Oil Co.,* 91 S.W.2d 453, 457 (Tex.Civ.App.—Texarkana 1936, writ ref'd); *Beavers v. Taylor,* 434 S.W.2d at 231; *Wagner v. Austin Sav. & Loan Ass'n,* 525 S.W.2d 724, 731 (Tex.Civ. App.—Beaumont 1975, no writ).

However, more recent Texas cases have adopted a contrary rule. In *Dixon v. Brooks,* 604 S.W.2d 330, 334 (Tex.Civ.App. —Houston [14th Dist.] 1980, writ ref'd n.r. e.), the court stated, "A contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest." Similarly, "[a] contract is usurious if there is any mode or contingency by which the lender could receive more than the maximum rate of interest allowed by law." *Dixon v. Brooks,* 678 S.W.2d 728, 729 (Tex. App.—Houston [14th Dist.] 1984, no writ).[8]

Where the Texas Supreme Court has touched on the issue, it seems to favor the rule of the more recent appellate cases. *See Smart v. Tower Land & Inv. Co.,* 597 S.W.2d 333, 341 (Tex.1980) ("The contract under construction will not be found usurious on its face unless it expressly entitles the lender, *upon the happening of a contingency or otherwise,* to exact interest at a rate greater than that allowed by law" (emphasis added)); *Shropshire v. Commerce Farm Credit Co.,* 120 Tex. 400, 30 S.W.2d 282, 285 (1930), *cert. denied,* 284 U.S. 675, 52 S.Ct. 130, 76 L.Ed. 571 (1931) ("[A] contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts.").

Moreover, the instant case is readily distinguishable from cases such as *Pansy Oil, Beavers,* and *Wagner.* In those cases, the amount to be paid for the use of the lender's money was entirely uncertain, as the interest was based upon a percentage of profits or sales which were themselves speculative. In the instant case, on the other hand, the 25% return had been computed and written into the contract, and defendants, before the perfume sales even were made, obligated themselves to pay this specific sum as a "commission."

Therefore, even if Trotter's interpretation of the contract were accepted, the transaction is still usurious, since whenever defendants would make their expected profit, they would be obliged to pay interest at a 25% rate. Since plaintiffs present no evidence showing that defendants' agreement to pay commissions, as evidenced by the cover letter, was unenforceable by plaintiffs under *all* circumstances, the summary judgment evidence shows that there is a contingency by which defendants would be obligated to pay an unlawful rate of interest. Hence, the transaction is usurious.

## VI.

■■■■ Finally, plaintiffs assert that, because the defendants solicited plaintiffs' money and defendants structured the deal, defendants should be estopped to assert the defense of usury. This argument does not avail them. In almost all usury cases, it is the borrower who solicits the funds; lenders rarely force their money on unwitting borrowers.[9] Furthermore, "[a]s between the original parties to a transaction estoppel is not ordinarily applicable in usury cases." *Miller v. First State Bank,* 551 S.W.2d at 101. Moreover, even if estoppel were applicable to a suit asserting usury,

---

8. *See also Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513, 518 (Tex.Civ.App.—Corpus Christi 1981, no writ) ("The contract, to be usurious on its face, or to provide for the payment of unearned interest, must *expressly* entitle the lender, upon the happening of a contingency, to exact interest at a rate greater than that allowed by law" (emphasis in original)).

9. *See also Tanner Dev. Co. v. Ferguson,* 561 S.W.2d 777, 781 (Tex.1977) ("[O]nce the agreed terms have been reduced to writing in the form of a compulsory contract, the test of alleged usury is not concerned with which party might have originated the alleged usurious provisions."); *Maxwell,* 433 S.W.2d at 234.

estoppel is not available in the absence of evidence of deceptive conduct. *See id.*

## VII.

Accordingly, summary judgment for plaintiffs and sanctions against defendants are REVERSED. The case is REMANDED to the district court for entry of summary judgment for defendants on their usury claim, for determination and assessment of any appropriate penalties and forfeitures associated with a finding of usury under Texas law, and for further proceedings consistent herewith.