**FIRST USA MANAGEMENT, INC., Appellant**

v.

**Dale ESMOND, Appellee.**

No. 05–94–00824–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1995.

H. Robert Powell, Linda J. Burgess, Julie Caruthers Parsley, Hughes & Luce, LLP, Austin, for appellant.

James A. Ellis, Jr., Carrington Coleman Sloma & Blumental, LLP, Dallas, for appellee.

Before OVARD, CHAPMAN and BARBER, JJ.

## OPINION

OVARD, Justice.

Appellant First USA Management, Inc. (First USA) appeals a summary judgment awarding appellee Dale Esmond (Esmond) damages on his usury and breach of contract claims. In eleven points of error, First USA argues the trial court erred in: (A) granting Esmond's motions for summary judgment on his usury and breach of contract claims; (B) denying First USA's motions for summary judgment on those claims; and (C) granting Esmond's motion for partial summary judgment on First USA's counterclaims. Because we conclude that genuine issues of material fact exist regarding Esmond's claims and First USA's counterclaims, we reverse the trial court's judgment and remand this cause to the trial court.

## RELEVANT FACTS

The summary judgment evidence establishes the following facts. Esmond sold his financial services software business (PEP Systems) to an affiliate of First USA. As a part of that transaction, First USA agreed to employ Esmond in his capacity as president of the purchased subsidiary company. The parties signed an Employment Agreement (the Agreement), which provided that Esmond would be employed by First USA for five years at an annual salary of $80,000. The Agreement further provided that Esmond would receive his $80,000 annual salary for the full five years unless he was terminated for cause or resigned without good reason. The Agreement specified the events which would trigger termination for cause. Pursuant to the Agreement, if First USA terminated Esmond without cause, it would be obligated to pay him the remaining salary due under the contract.

Soon after Esmond began working for First USA, he requested that the company extend him an $18,000 unsecured loan. First USA agreed, but required that Esmond sign an amendment to the Agreement (Amendment), which gave it the right to terminate

him for cause if he defaulted on the $18,000 loan. Esmond signed both the Amendment and a promissory note for $18,000 at eleven percent interest. Full payment on the note was due on May 18, 1991.

Esmond did not pay the note in full until August 16, 1991. On June 24, 1991, First USA informed Esmond that it was terminating his employment for cause under the Amendment. The termination was effective August 1, 1991, but First USA paid Esmond through August 31. As a result, First USA did not pay Esmond some $280,000 due under the Agreement.

Esmond filed suit in December 1991, alleging breach of the Agreement. First USA answered, pleading the Amendment as a defense and asserting counterclaims for misrepresentation, common-law fraud, and breach of fiduciary and/or contractual duties. First USA moved for summary judgment. Esmond amended his complaint to add a usury claim, then filed a motion for partial summary judgment on his usury claim. First USA filed a second amended motion for partial summary judgment on both Esmond's usury and breach of contract claims. First USA's motion did not address First USA's counterclaims against Esmond. On May 10, 1993, the trial court granted Esmond's motion for summary judgment on his usury claims and denied First USA's motion for summary judgment on Esmond's usury and breach of contract claims.

Esmond then filed a second motion for summary judgment based on his breach of contract claim and First USA's counterclaims. The trial court granted Esmond's motion for summary judgment based on the breach of contract claim and some of First USA's counterclaims. First USA nonsuited the rest of its counterclaims, and the trial court rendered final judgment. The final judgment awarded Esmond usury penalties in the amount of $1,137,911.23, contract damages in the amount of $243,161, and attorney's fees in the amount of $250,000. First USA appealed from this judgment.

## SUMMARY JUDGMENT STANDARDS

■ This Court will affirm a summary judgment only if the record establishes that the movant has conclusively proved, as a matter of law, all the essential elements of its cause of action or defense. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The movant has the burden to prove that no genuine issues of material fact exist and that it is entitled to summary judgment as a matter of law. *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300–01 (Tex.1990). We view all evidence favorable to the nonmovant as true, and indulge all inferences and resolve all doubts in the nonmovant's favor. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986).

■ ■ When both the plaintiff and the defendant move for summary judgment, each must carry its own burden to conclusively prove all of the elements of its cause of action as a matter of law, and neither should prevail in the trial court because the other fails to discharge its burden. *Shoberg v. Shoberg,* 830 S.W.2d 149, 151 (Tex.App.— Houston [14th Dist.] 1992, no writ); *Shade v. City of Dallas,* 819 S.W.2d 578, 584 (Tex. App.—Dallas 1991, no writ); *see also Guynes v. Galveston Co.,* 861 S.W.2d 861, 862 (Tex. 1993). When one party's motion for summary judgment is granted and the other's motion is denied, the appellate court should determine all questions presented to the trial court, including whether the losing party's motion should have been overruled. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988).

## USURY

### A. The Parties' Contentions

In its first two points of error, First USA asserts the trial court erred in granting Esmond's motion for summary judgment on his usury claim and in denying its motion for summary judgment on the usury claim. First USA contends the summary judgment evidence established that First USA neither charged nor received usurious interest and, therefore, no basis for a usury finding existed as a matter of law. In its third point of error, First USA contends the promissory note contains a savings clause that precluded First USA from charging or receiving usurious interest. In its fourth point of error, First USA asserts alternatively that fact is-

sues exist as to Esmond's usury claim and, thus, the trial court erred in granting summary judgment. Esmond maintains he conclusively established all the essential elements of his usury claim and was entitled to summary judgment as a matter of law.

### B. Applicable Law

■■■ Under Texas law, usury is defined as the contracting for, charging of, or collecting of interest in excess of the amount allowed by law. Tex.Rev.Civ.Stat.Ann. art. 5069–1.01 (Vernon 1987). Interest is defined as compensation for the use, forbearance, or detention of money. Tex.Rev.Civ.Stat.Ann. art. 5069–1.01(a) (Vernon 1987); *First Bank v. Tony's Tortilla Factory,* 877 S.W.2d 285, 287 (Tex.1994). Without interest, no basis for usury exists. *Texas Commerce Bank v. Goldring,* 665 S.W.2d 103, 104 (Tex.1984). Generally, in order to prove usury, a party must establish three elements: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the borrower's use of the money. *Tony's Tortilla Factory,* 877 S.W.2d at 287.

■■■ Texas courts have recognized that not every charge in connection with a loan is interest. *See Tony's Tortilla Factory,* 877 S.W.2d at 287 (bank's fee for checks drawn on account with insufficient funds not interest); *Goldring,* 665 S.W.2d at 104 (attorney's fees paid by lender and charged to borrower not interest); *Stedman v. Georgetown Sav. & Loan Ass'n,* 595 S.W.2d 486, 489 (Tex.1979) (commitment fee not interest); *Southland Life Ins. Co. v. Egan,* 126 Tex. 160, 86 S.W.2d 722, 724–25 (1935) (prepayment penalty not interest); *Bearden v. Tarrant Savs. Ass'n,* 643 S.W.2d 247, 249 (Tex. App.—Fort Worth 1982, writ ref'd n.r.e.) (prepayment penalty not interest); *Morris v. Miglicco,* 468 S.W.2d 517, 519 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.) (brokerage fee not interest). A charge that entitles the borrower to a distinctly separate and additional consideration apart from the lending of money is not interest and, therefore, cannot be the basis for usury. *Goldring,* 665 S.W.2d at 104; *Stedman,* 595 S.W.2d at 489; *Ross v. Walker,* 554 S.W.2d

189, 190 (Tex.1977); *Greever v. Persky,* 140 Tex. 64, 67, 165 S.W.2d 709, 712 (1942). Whether a fee is interest presents a question of fact when there is any dispute in the evidence as to whether the fee is a charge for an additional consideration or merely a device to conceal usury. *Tony's Tortilla Factory,* 877 S.W.2d at 287; *see Goldring,* 665 S.W.2d at 104; *Gonzales County Sav. & Loan Ass'n v. Freeman,* 534 S.W.2d 903, 906 (Tex.1976).

### C. Application of the Law to the Facts

#### 1. Nature of the Charge

The parties acknowledge that First USA loaned Esmond $18,000 and that Esmond had an absolute obligation to repay that sum. However, the parties do not agree that the Amendment allowed First USA to exact usurious interest. Specifically, the parties dispute whether the $280,000 in retained income constitutes interest.

In its first point of error, First USA asserts, in part, that the retained income was not given as compensation for the use, forbearance, or detention of First USA's money, but was given in exchange for separate and additional consideration. Thus, First USA maintains the income was not interest. Esmond, on the other hand, contends the $18,000 loan was the only consideration for the Amendment. He asserts the Amendment was given in consideration for the loan. He maintains First USA charged and received interest when, after terminating him for cause, it retained his salary pursuant to the Amendment.

■■■ First USA provided the following summary judgment evidence. Pamela H. Patsley, First USA's Chief Financial Officer and Executive Vice President, testified by affidavit that she did not recall First USA's ever having extended an unsecured loan (other than a credit card) to an employee. She further testified that she reviewed First USA's records and determined that no similar loan was ever documented. She also stated that she and John Tolleson, First USA's Chief Executive Officer, discussed Esmond's request to obtain the loan. She stated that they decided to require the Amend-

ment in order to preserve First USA's employment relationship with Esmond and ensure that if Esmond defaulted on the loan, First USA could terminate him for cause. She testified that they believed his default would call into doubt First USA's ability to trust Esmond as an important member of the management team.

This summary judgment evidence suggests First USA required the Amendment in exchange for its change in company policy and the risks it was taking in altering its employment relationship with Esmond. However, this testimony alone does not establish as a matter of law that First USA had a legitimate purpose in requiring the Amendment. Thus, there was a dispute in the evidence as to whether the retained salary was a charge for an additional consideration, a charge for the use, forbearance, or detention of money, or merely a device to conceal usury. This dispute created a fact question. *See Tony's Tortilla Factory,* 877 S.W.2d at 287; *Goldring,* 665 S.W.2d at 104; *Freeman,* 534 S.W.2d at 906. Consequently, neither party established the nature of the charge as a matter of law. However, First USA advances three alternative theories it argues establish as a matter of law that it did not charge and receive usurious interest.

### 2. Contingent Nature of Charge

In its first point of error, First USA also contends it could not have charged and received usurious interest because the charge under the Amendment was speculative and contingent. First USA asserts the contingent nature prevents the charge from constituting usury as a matter of law. In response, Esmond contends any contingency would render the contract usurious as a matter of law.

#### a. Determination of Contingency

First USA asserts the amount of "interest" it received was speculative for two reasons. First, the value First USA received under the contract was not the $280,000 in retained income, but the difference in value between what First USA owed Esmond and the value of Esmond's continued services to First USA over the life of the contract. Second, Es-

mond cannot state with certainty that he was entitled to $280,000, because his annual base salary of $80,000 could have ended prior to the contract's five-year term for any of several reasons, including (a) Esmond's death or disability, (b) Esmond's being terminated for any of the other "cause" reasons stated in the contract, or (c) Esmond's resignation from First USA without good reason under the contract. Esmond counters that the value, at the time First USA *charged* and *received* it, was not speculative or contingent because, on the day First USA terminated Esmond's income stream, it released itself from a $280,000 obligation and thereby gained that amount.

 Although we agree with Esmond that the amount was certain at the time First USA received it, we determine that the amount First USA was entitled to under the Amendment was contingent. Before First USA could terminate Esmond, he had to default on the note. After a default, First USA could then terminate Esmond whenever it chose and retain the remainder of Esmond's salary under the contract. Therefore, the amount that First USA could retain was contingent upon (1) Esmond's default and (2) First USA's exercise of its rights under the Amendment pursuant to the default.

#### b. *Beavers* and *Najarro*

First USA contends the contingency prevented the charge from constituting usury as a matter of law. Esmond contends the contingency rendered the charge usurious as a matter of law. In support of its position, First USA relies on *Beavers v. Taylor,* 434 S.W.2d 230, 231 (Tex.Civ.App.—Waco 1968, writ ref'd n.r.e.). The *Beavers* court stated:

A loan is not usurious where the promise to pay a sum depends upon a contingency [citations omitted]. And a contract is not usurious where the lender is to receive uncertain value ... even though the probable value is greater than lawful interest.

*Id.; see also Shoberg,* 830 S.W.2d at 153; *Wagner v. Austin Sav. & Loan Ass'n,* 525 S.W.2d 724, 730 (Tex.App.—Beaumont 1975, no writ).

In response, Esmond relies on *Najarro v. SASI Int'l, Ltd.*, 904 F.2d 1002 (5th Cir. 1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991), and *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333 (Tex.1980). The *Najarro* court held that "[a] contract is usurious as a matter of law if there is any contingency by which the lender may receive more than the lawful rate of interest." *Najarro*, 904 F.2d at 1010 (quoting *Dixon v. Brooks*, 678 S.W.2d 728, 729 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.)). In *Smart*, the Texas Supreme Court stated that "[t]he contract under construction will not be found usurious on its face unless it expressly entitles the lender, upon the happening of a contingency or otherwise, to exact interest at a rate greater than that allowed by law." *Smart*, 597 S.W.2d at 341.

We recognize an apparent conflict between the principles in *Beavers* and in *Najarro* and *Smart*. However, we also recognize a distinction in the facts of these cases. In *Beavers* and its progeny, the amount the borrower would have to pay for the use of the lender's money was so uncertain at the time the parties contracted that even if the contingency occurred, the borrower would not necessarily pay usurious interest. *See Shoberg*, 830 S.W.2d at 153; *Wagner*, 525 S.W.2d at 731; *Beavers*, 434 S.W.2d at 231. In *Najarro* and the cases it relies upon, the amount of contingent interest *written into the contract* was usurious. If the contingency occurred, the borrower would be obligated to pay usurious interest. *See Najarro*, 904 F.2d at 1010; *Dixon*, 678 S.W.2d at 729; *see also Smart*, 597 S.W.2d at 341 (stating that a contract will not be usurious "unless it *expressly* entitles the lender, upon the happening of a contingency or otherwise, to exact interest at a rate greater than that allowed by law" (emphasis added)).

We conclude the facts in the instant case are more like the facts in *Beavers*. Under the Amendment, the amount of salary First USA could have retained depended on several factors, including when Esmond defaulted and when First USA exercised its right to terminate him for cause. Unlike the situation in *Najarro*, the Amendment did not *expressly* entitle First USA to usurious interest even in the event of default and termination. The speculative charge was based on a contingency similar to the *Beavers* contingency.

### c. Remaining fact issue

Although we have determined that the charge was based on a contingency and that the *Beavers* reasoning applies, our analysis does not end. Contingency of payment is just one factor that courts should consider when determining a usury claim. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). Texas courts have held that when a contract is not usurious on its face, the party alleging usury must show: (1) a device or subterfuge to charge usury existed; and (2) the parties contemplated a usurious purpose at the time they executed the contract. *Beavers*, 434 S.W.2d at 231; *Moss v. Metropolitan Nat'l Bank*, 533 S.W.2d 397, 399 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ); *American Century Mtg. Investors v. Regional Ctr.*, 529 S.W.2d 578, 583 (Tex. Civ.App.—Dallas 1975, writ ref'd n.r.e.). In this case, the trial court did not find, and the parties do not contend, that the contract was usurious on its face. Therefore, even if the contract in this case was based upon a contingency, Esmond is not precluded from presenting evidence that the contract constituted a device or subterfuge to commit usury. One cannot design a usury scheme and then build it around a contingency in order to evade the usury laws. *See Gonzales County Sav. and Loan Ass'n v. Freeman*, 534 S.W.2d 903, 906 (Tex.1976) (stating that "courts will look beyond the form of the transaction to its substance in determining the existence or nonexistence of usury").

We have already determined that neither party conclusively established the nature of the charge as a matter of law. Thus, a fact question remains as to whether the charge was a device to conceal usury. As a result, we cannot conclude that the contingent nature of the Amendment defeats Esmond's usury claim as a matter of law.

### 3. Absence of Reliance on Amendment

In its first point of error, First USA also maintains Esmond's termination for cause

was authorized under the Agreement, and once Esmond defaulted on the note, First USA did not need to rely on the Amendment to terminate him. First USA contends the Amendment, therefore, did not result in any new benefit to First USA or detriment to Esmond that could be categorized as interest for usury purposes. We disagree.

The trial court did not find, and the parties do not contend, that the contract was usurious on its face. Accordingly, whether First USA relied on the Agreement or the Amendment is irrelevant to a determination of whether it charged and received usurious interest.

### 4. Savings Clause

Finally, in its third point of error, First USA contends the promissory note contained a savings clause precluding First USA from charging or receiving usurious interest. Without deciding whether the provision constitutes a valid savings clause, we determine that the effect of a savings clause in this case would require determination of the fact issues. *See Woodcrest Assoc., Ltd. v. Commonwealth Mtg. Corp.,* 775 S.W.2d 434, 438 (Tex.App.—Dallas 1989, writ denied).

### 5. Effect of Fact Question

Neither party carried its burden to prove that no genuine issue of material fact existed as to Esmond's usury claim. None of the alternative theories First USA advances establishes as a matter of law that it did not charge or receive usurious interest. As a result, we determine the trial court improperly granted Esmond's motion for summary judgment on the usury claim and properly denied First USA's motion for summary judgment on the usury claim. Therefore, we sustain First USA's first and fourth points of error. Furthermore, we sustain First USA's second point of error to the extent that the trial court erred in granting Esmond's motion for summary judgment on the usury claim. We need not address the merits of First USA's third point of error.

### BREACH OF CONTRACT

In its fifth point of error, First USA contends, in part, that the trial court erred in granting Esmond's second motion for partial summary judgment on Esmond's breach of contract claim. First USA asserts it did not breach the Employment Agreement because: (1) it terminated Esmond for cause under the Agreement and did not need to rely on the Amendment; and (2) the Amendment was not a contract for usurious interest. First USA maintains it was simply exercising its contractual rights under a valid agreement. Esmond counters that First USA's actions pursuant to the Amendment cannot provide a valid affirmative defense to excuse its breach of the Agreement because the trial court found that First USA charged and received illegal usurious interest under the Amendment.

Esmond's summary judgment arguments depend on the trial court's finding of usury. We have determined a fact question exists on Esmond's usury claim. We therefore sustain First USA's fifth point of error to the extent it asserts the trial court erred in granting Esmond's summary judgment on First USA's breach of contract claim.

### FIRST USA'S COUNTERCLAIMS

In its fifth and eleventh points of error, First USA contends the trial court erred in granting Esmond summary judgment on First USA's counterclaims. First USA asserts that because genuine issues of material fact exist, Esmond was not entitled to summary judgment on First USA's counterclaims of misrepresentation, common-law fraud, and breach of fiduciary duty and/or contractual duties.

As a basis for its counterclaims, First USA alleged that Esmond made various misrepresentations, including:

Representing both before and during employment with First USA that First USA would become a "dominant player in the insurance industry" if it purchased PEP Systems because of the superior quality of PEP Software;

Representing that he had owned many banks and managed over one hundred loan officers;

Representing that his bank ownership and management experience led to the development of PEP Software and PEP Systems;

Representing that his personal sales ratio was eighty percent and that he could maintain at least a sixty percent sales ratio (at least six to eight institutions out of ten would purchase the PEP Software) if he pursued the sale;

Representing he was an expert on the Texas market and that a substantial market for PEP Software existed in Texas because of his thorough research of that market;

Representing that PEP Software performed flawlessly and was free of operational problems, making statements that PEP Software packages were the "best in the world" and "incomparable;"

Representing that PEP Systems had 10,-000 customers, of which 2,000 were active;

Representing that all customers using PEP Software were overwhelmingly satisfied with the performance and operation of the software; and

Representing that another company was also interested in purchasing PEP Systems, which induced First USA to purchase PEP Systems sooner than anticipated because of its right of first refusal.

First USA alleged that all of these statements were material misrepresentations upon which First USA detrimentally relied.

 Esmond argues that the above statements were not misrepresentations but were instead opinions, statements about future events, and/or puffery, which are not actionable as fraud. We agree that in order to constitute actionable fraud, the representations must concern material facts as distinguished from matters of opinion, judgment, probability, or expectation. *See Ryan v. Collins*, 496 S.W.2d 205, 210 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.); *see also Berquist v. Onisiforou*, 731 S.W.2d 577, 580 (Tex.App.—Houston [14th Dist.] 1987, no writ). However, we also recognize that the question of whether a fraud has been committed as herein alleged is a question of fact to be determined by the trier of fact. *See, e.g., Maddux v. Brownen*, 759 S.W.2d 183, 185 (Tex.App.—Waco 1988, writ denied);

*Berquist*, 731 S.W.2d at 580. First USA's counterclaims are based on the alleged misrepresentations. Because there is a dispute in the evidence as to whether the statements were misrepresentations or opinions, statements about future events, and/or puffery, genuine issues of material fact exist with respect to these alleged misrepresentations.

Because we have determined that genuine issues of material fact exist, we hold the trial court erred in granting summary judgment as to First USA's counterclaims. We therefore sustain First USA's eleventh point of error. Furthermore, we sustain its fifth point of error to the extent it asserts the trial court erred in granting Esmond summary judgment on First USA's counterclaims.

## CONCLUSION

Due to our disposition of the above points of error, we need not reach First USA's remaining points. We reverse the summary judgments and remand this case to the trial court for a determination of Esmond's usury and breach of contract claims and of First USA's counterclaims.