

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-16-00029-CV

PAT WOOD AND JOHNNY WOOD, APPELLANTS

V.

CARPET TECH, LTD., APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2013-509,583, Honorable Ruben Gonzales Reyes, Presiding

November 2, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Pat and Johnny Wood (the Woods) appeal from a judgment denying them recovery against Carpet Tech, Ltd. (Carpet Tech).[1] Their two issues implicate the legal and factual sufficiency of various fact findings executed by the trial court. Through the first they contend that neither legally nor factually sufficient evidence supports the trial court's decision to reject their claim of usury. Through the second they assert that the decision to deny them damages similarly lacks evidentiary support. We affirm.

---

[1] Carpet Tech filed a cross-appeal. It has since been dismissed per Carpet Tech's motion.

*Background*

The dispute arose from a house fire experienced by the Woods. They hired Carpet Tech to conduct remediation efforts. Those efforts included both the salvaging of personalty and the demolition and reconstruction of various parts of the house. The combined bill for doing those tasks exceeded $200,000 and much of it was paid by the Woods as the work proceeded. However, they withheld a final payment approximating $25,860 because they believed the work done was deficient in several respects. Carpet Tech eventually assessed an interest charge on the outstanding sum at 1.5 % per month or 18% per annum. So too did it sue to recover the debt. In turn, the Woods filed their counterclaim against Carpet Tech, alleging multiple causes of action including one sounding in breached contract and another in usury.

Trial was to the court. Thereafter, judgment was entered denying recovery to all the parties. Findings of fact and conclusions of law were also executed by the trial court in support of its judgment.

*Issue One — Usury*

In denying the claim of usury, the trial court found that "Carpet Tech did not improperly charge interest on the amounts it contended were due and owing by the Woods." The Woods now "challenge[] the legal and factual sufficiency of the trial court's finding that Carpet Tech's charge of at least 18% on the contents job invoice was legal." Allegedly, they established as a matter of law the elements of usury, which elements consisted of proof that "(a) Carpet Tech loaned money to Wood by extending credit for the contents remediation services it rendered, (b) Wood had an absolute obligation to repay the contents invoice, and (c) Carpet Tech charged interest that

exceeded the maximum allowed by law." The maximum, according to them, was 6% per annum. We overrule the issue.

As argued by the Woods, they had to prove 1) the existence of a loan of money or extension of credit, 2) an absolute obligation to repay the principal, and 3) the exaction of greater compensation than that allowed by law for the borrower's use of the money or credit.[2] *First Bank v. Tony's Tortilla Factory,* 877 S.W.2d 285, 287 (Tex. 1994). It is the second element that we address.

An absolute obligation to pay connotes the absence of any contingency. *See Anglo-Dutchman Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 96-97 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (stating that "appellees' right to recover their principal and any return on their investment was contingent upon Anglo-Dutch's cash recovery, if any, in the Halliburton lawsuit" which meant that "[p]er the unambiguous terms of the agreements, Anglo-Dutch did not have an absolute obligation to repay the principal amounts that appellees invested."). In other words, if the obligation to pay is contingent, it is not an absolute one. *Id.*; *Wagner v. Austin Sav. & Loan Ass'n*, 525 S.W.2d 724, 730-31 (Tex. Civ. App.—Beaumont 1975, no writ) (holding that there was no usury since repayment was dependent upon the occurrence of various contingencies, one of which encompassed the installation of the utilities in accordance with governing ordinances); *Pansy Oil Co. v. Federal Oil Co.*, 91 S.W.2d 453, 457 (Tex. Civ. App.—Texarkana 1936, writ ref'd) (holding that there was no usurious transaction because repayment of any amount under said contract or the arrangement rested on contingencies of, first, drilling and, second, producing minerals in paying quantities).

---

[2] We make no comment on whether such elements must be established in every claim of usury. Because the Woods argued that they applied here and attempted to show that those elements were proven, we address whether they met the burden.

The record before us shows that the Woods executed a "Repair & Pay Authorization" provided by Carpet Tech before initiation of the work. The document apparently reflects aspects of the agreement between the parties. A portion of it specified that the Woods understand "that the full amount for the services provided will be due *upon completion.*" (Emphasis added). The record further reveals that they made payments to Carpet Tech as the work progressed. However, those payments eventually stopped. They did so, according to the trial court, ". . . because [they] maintained that several parts of the jobs were improperly performed or not completed." The trial court also found that Carpet Tech had "failed to fully perform under the agreement. . . ." No one disputes those findings. Nor do the Woods question the verbiage of the "Repair & Pay Authorization." And, looking at that language again, it is clear that the Woods' obligation to pay Carpet Tech was contingent upon Carpet Tech completing, or performing, its duties. So, there is some evidence of record upon which a rational factfinder could conclude that the Woods had no absolute obligation to pay monies demanded by Carpet Tech, especially when they and the trial court actually believed Carpet Tech did not fully perform. So, they did not prove their claim of usury, as a matter of law, as argued. *See Torres v. McCann*, No. 13-15-00187-CV, 2016 Tex. App. LEXIS 6079, at *15 (Tex. App.—Corpus Christi June 9, 2016, no pet.) (mem. op.) (stating that "[i]f sufficient evidence was presented such that 'reasonable minds could differ about the fact determination to be made by the jury,' then appellants are not entitled to judgment as a matter of law"). And, when the entire record is considered, we cannot say that the trial court's decision to reject the usury claim was contrary to the overwhelming weight of the evidence so as to render the decision manifestly wrong or

4

unjust. *See Hardwick v. Smith Energy Co.*, No. 07-15-00083-CV, 2016 Tex. App. LEXIS 6805, at *4-5 (Tex. App.—Amarillo June 27, 2016, no pet.) (stating that when a party raises the claim of factual insufficiency, we consider all the evidence and set aside the finding only if the evidence supporting the finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust).

*Issue Two — Damages*

Next, the Woods aver that the trial court's finding of no damages lacks the support of both legally and factually sufficient evidence. We disagree.

The trial court entered a factual finding and legal conclusion directly pertaining to the damages. In the former, it ruled that with respect to the "estimated amounts to repair or complete the construction portion of the agreement," the Wood's expert "failed to provide any evidence that these amounts were reasonable or necessary." Although the witness "recited that the amounts were customary or reasonable," neither he nor the Woods "offer[ed] additional evidence to show any basis or support for the reasonableness of [the] amounts." Through the conclusion of law, it held that the Woods "failed to provide legally sufficient evidence to support any damage." Our effort to assess whether this finding and conclusion are accurate begins with a brief discussion about the law of damages applicable to the breach of construction contracts.

There are two ways to measure damages for breaching such an agreement. One involves remedial damages which are determined by "the cost to complete or repair less the unpaid balance on the contract price." *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012); *CCC Group, Inc. v. South Cent. Cement, Ltd.*, 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The other measure is known as the

5

"difference-in-value damages" or damages represented by the difference between the value of the building as constructed and its value had it been constructed according to the contract. *McGinty v. Hennen*, 372 S.W.3d at 627.

Where the first measure (*i.e.* remedial damages) is used, as here, the party seeking relief must prove that the damages sought were reasonable and necessary. *Id.* To do so demands more than merely proffering evidence illustrating the nature of the injuries, the character of and need for the services rendered, and the amounts charged for the services. *Id.* "Instead, some other 'evidence showing that the charges are reasonable' is required." *Id., quoting, Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377, 383 (Tex. 1956). While one need not have a witness utter the buzzwords "reasonable and necessary" to satisfy the test, *CCC Group, Inc. v. South Cent. Cement, Ltd.*, 450 S.W.3d at 200, simply uttering those words is not enough either. *See Nigalye v. Orr*, No. 11-12-00003-CV, 2013 Tex. App. LEXIS 11247, at *10-11 (Tex. App.—Eastland August 30, 2013, no pet.) (mem. op.) (stating that "we do not agree that the evidence conclusively proves that $2,479,220.89 was the reasonable and necessary cost to complete the construction of the home" because the party seeking damages presented no evidence "of what work had to be performed . . . to complete the construction of the home as originally designed . . . [and] . . . other than Orr's and Simpson's conclusory testimony that the costs were reasonable and necessary, Appellants did not present any specific evidence explaining how [they] determined that the costs were reasonable and necessary."); *see also Dilston House Condo Ass'n v. White*, 230 S.W.3d 714, 718 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (involving an award of attorney's fees and stating that general statements of reasonableness are

6

insufficient); *Silverberg v. Texas Commerce Bank, N.A.*, No. 01-95-00564-CV, 1996 Tex. App. LEXIS 3348, at *21 (Tex. App.—Houston [1st Dist.] 1996, no pet.) (involving an award of attorney's fees and holding that conclusory statements in an affidavit are insufficient to defeat summary judgment and a general statement that the fee amount sought is reasonable and necessary will not support a finding of reasonableness). As indicated in *Nigalye*, there must be evidence explaining how or why the expense was reasonable and necessary. *Nigalye v. Orr*, *supra*. Requiring the latter is no more than heeding the directive in *Houston Unlimited, Inc. v. Mel Acres Ranch*, 443 S.W.3d 820 (Tex. 2014). There we were told that if the basis for an expert opinion is missing or the basis actually provides no support for the opinion, then the opinion is a mere conclusory statement lacking in evidentiary value. *Id.* at 829. This is so because the evidentiary value of an expert's testimony comes "from the basis [of his opinion], not from the mere fact that the expert said it." *Id.*

With the foregoing in mind, we turn to the record before us. No doubt it contains testimony from an expert explaining what repairs or construction he thought needed to be done due to the breach by Carpet Tech. They included 1) "[r]emoval and replacement of exterior siding per foot of 'pine or equal' siding and paint and caulk at $8.50 @ 1,581 sq. ft.= $13,438," 2) "[w]idening of the garage opening and installation of 18 foot door, paint and finish out $4,200," 3) "[r]einstall interior 21 foot glass wall $8,000-$12,000," 4) "[i]nterior repairs including paint, repair of paneling, repair cigarette damage on the mantle, close open space under sink, and miscellaneous $1,500-$3,000," 5) "[r]eplace or repair windows $1,500-$3,000," 6) "[r]oof repair $1,000-$5,000," 7) "[f]loor vents $500-$1,000," 8) "[d]emolition of existing area and re-install kitchenette

7

in 4th bedroom $10,000," and 9) "[o]verhead and profit = 20%." When asked, the witness also testified that the charges or range of costs mentioned were "reasonable and customary." And, when asked about the price range applicable to the listed tasks, he said normally if the work to be done was not as extensive as he may have thought, then the lower number would be appropriate or the cost would be less. That alone may lead a factfinder to reasonably deduce that some of the work factored into his estimate may not be necessary or that the expert may not have known about the extent of work actually needed.

Nor can one easily ignore the difference between the sum depicting the lower range and that depicting the higher. In many cases the higher amount was twice that of the lower. That again could be viewed, by the factfinder, as casting doubt on what repairs were actually needed.

Most importantly, though, is the general absence of information regarding how he derived either the lower or higher number or any number between them. Whether they generally reflected the average costs of materials or labor in the area or anywhere else is unknown. Nor was their evidence explaining (or providing a reasonable estimate of) the amount of materials needed to complete the work, the cost of the materials themselves, the quantum of manpower needed, and the cost of that manpower.[3] In

---

[3] For instance, the estimate for removing and replacing exterior siding was $13,438, according to the expert. The sum was derived by multiplying 1,581 sq. ft by $8.50 a sq. ft. One would think that the $8.50 a foot charge encompassed the cost of materials and labor. But, the expert did not explain what portion of the sum constituted the materials and what constituted labor. Nor did he explain why the costs of materials and labor implicit in the amount was reasonable. The same is true regarding the $1500-$3000 estimate for interior repairs. While he may have mentioned various components factored into the sum (*e.g.* 3 people working for 3 days at $50 and hour), he did not describe why or explain how the number of hours to be expended or the charge was reasonable. Nor did he discuss the materials to be used, their cost, and why that cost is reasonable. As acknowledged in *McGinty*, explaining how the figure was derived does not itself necessarily make the figure reasonable. *McGinty v. Hennen*, 372 S.W.3d 625, 628 (Tex. 2012).

other words, the basis for the dollar figures to which the expert opined is missing. Like the situation in *Nigalye*, no one explained "how [the expert] determined that the costs were reasonable and necessary." Consequently, the expert's opinions about the sums being "reasonable and customary" are mere conclusions and, therefore, no evidence, and no other evidence fills the void.[4]

The trial court did not err in finding that no evidence illustrated that the damages sought by the Woods were reasonable and necessary. There being no evidence of the matter, it cannot be said that the evidence contradicting the trial court's finding was so overwhelming as to merit a new trial. So, the Woods satisfied neither burden imposed by the standards of review applicable to claims of legal and factual insufficiency.

Each issue is overruled, and the judgment is affirmed.


Brian Quinn
Chief Justice

---

[4] This is not a situation where proof of damage was tendered via affidavit provided by § 18.001 *et. seq* of the Texas Civil Practice and Remedies Code. Our decision is not intended to address those cases holding that a mere statement that damages are reasonable and necessary is enough when the statement is uncontroverted. *See e.g. Cactus Well Serv., Inc. v. Energico Prod.,* No. 02-13-00186-CV, 2014 Tex. App. LEXIS 12573, at *22 (Tex. App.—Fort Worth November 29, 2014, pet. denied) (mem. op.) (holding that "Knight's affidavit, which was uncontroverted and verified that Cactus's charges and services were reasonable and necessary, was 'sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary" per § 18.001(b) of the Texas Civil Practice and Remedies Code).